UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ──────────────────────── x | | |
| SAURAV BANERJEE, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No.   1:21-cv-9634 |
| | : | |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | COMPLAINT FOR VIOLATIONS OF THE |
| vs. | : | SECURITIES ACT OF 1933 |
| | : | |
| ZHANGMEN EDUCATION INC., YI ZHANG, RICKY KWOK YIN NG, TENG YU, COGENCY GLOBAL INC., COLLEEN A. DE VRIES, MORGAN STANLEY & CO. LLC and CREDIT SUISSE SECURITIES (USA) LLC, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ──────────────────────── x | DEMAND FOR JURY TRIAL |

Plaintiff Saurav Banerjee ("plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation undertaken by plaintiff's counsel, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings of Zhangmen Education Inc. ("Zhangmen" or the "Company"), as well as securities analysts' reports and advisories about the Company, press releases, media reports, and other public statements issued by or about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all those who purchased or otherwise acquired the American Depositary Shares ("ADSs") of Zhangmen in or traceable to the Company's initial public offering (the "IPO"), conducted on or about June 8, 2021, pursuant to the IPO prospectus (the "Prospectus") and Form F-1 registration statement, as amended (together with the Prospectus, the "Registration Statement"), seeking to pursue remedies under §§11 and 15 of the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§11 and 15 of the Securities Act, 15 U.S.C.

3.      This Court has jurisdiction over this action pursuant to §22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §1331.

4.      Venue is properly laid in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391.  The acts and conduct complained of herein occurred, in substantial part, in this District, as the IPO was conducted in this District.  In addition, Zhangmen's agent for service of

- 1 -

process in the United States is located in this District; the Underwriter Defendants (defined below) conduct substantial operations in this District; and the ADSs are listed and trade on the New York Stock Exchange ("NYSE"), a national stock market based in this District.

5.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Saurav Banerjee purchased Zhangmen ADSs in and/or traceable to the IPO, as set forth in the accompanying certification incorporated by reference herein, and has been damaged thereby.

7.      Defendant Zhangmen, based in Shanghai, People's Republic of China ("China" or the "PRC"), is an education company focused on providing personalized online courses to K-12 students in China.  The Company's ADSs trade on the NYSE under the ticker symbol "ZME," with each ADS representing nine of the Company's Class A ordinary shares.

8.      Defendant Yi Zhang ("Zhang"), Zhangmen's co-founder, served as Chairman of the Company's Board of Directors and as its Chief Executive Officer at the time of the IPO.  Defendant Zhang signed the defective Registration Statement.

9.      Defendant Ricky Kwok Yin Ng ("Ng") served as a Director and the Chief Financial Officer of the Company at the time of the IPO.  Following the IPO, defendant Ng transitioned to serve as Zhangmen's Vice President of its Liberal Education Business.  Defendant Ng signed the defective Registration Statement.

10.     Defendant Teng Yu ("Yu"), Zhangmen's co-founder, served as a Director of the Company at the time of the IPO.  Defendant Yu signed the defective Registration Statement.

11.     Defendants Zhang, Ng and Yu are collectively referred to herein as the "Individual Defendants."

12.     Defendant Cogency Global Inc. ("Cogency Global") is a Delaware corporation whose principal executive office is located at 122 East 42nd Street, 18th Floor New York, NY 10168. Defendant Zhangmen designated Cogency Global as its agent upon whom process may be served in any action brought against it under the securities laws of the United States.  Defendant Cogency Global caused defendant Colleen A. De Vries to sign the defective Registration Statement in New York, New York on its behalf.

13.     Defendant Colleen A. De Vries ("De Vries"), at all relevant times, was Zhangmen's authorized U.S. representative in connection with her position as a Senior Vice President of Cogency Global.  Defendant De Vries signed the defective Registration Statement in New York, New York on her own behalf and on behalf of Cogency Global.

14.     Defendants Cogency Global and De Vries are referred to herein as the "Cogency Global Defendants."

15.     Defendants Morgan Stanley & Co. LLC ("Morgan Stanley") and Credit Suisse Securities (USA) LLC ("Credit Suisse") each served as underwriters and lead underwriter representatives for the IPO.  Defendants Morgan Stanley and Credit Suisse are collectively referred to herein as the "Underwriter Defendants."

16.     The Underwriter Defendants participated in the drafting and dissemination of the Registration Statement for the IPO and failed to perform adequate due diligence in connection with their roles as underwriters.  As a result, the Underwriter Defendants were negligent in failing to ensure that the Registration Statement for the IPO was prepared accurately and in accordance with the rules governing its preparation.  Collectively, the Underwriter Defendants and their underwriting

syndicate received underwriting discounts and commissions of approximately $3.3 million in connection with the IPO.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

17.     Unless otherwise noted, defendant Zhangmen, the Individual Defendants, the Cogency Global Defendants and the Underwriter Defendants are collectively referred to herein as "defendants."

## SUBSTANTIVE ALLEGATIONS

### Background to the IPO

18.     Incorporated under the laws of the Cayman Islands, defendant Zhangmen is a holding company focused on providing personalized online tutoring services to K-12 students in the PRC. The Company's core course offerings encompass both one-on-one and small-class after-school tutoring services covering all core K-12 academic subjects.

19.     According to the Registration Statement, China's online education market, which delivers courses to students via websites, mobile apps and other online platforms, is the largest such network worldwide.  According to Frost & Sullivan, a U.S. market research and analysis consulting firm, Zhangmen is, and has been, the largest online K-12 one-on-one after-school tutoring service provider in China in terms of gross billings, with a 2020 market share of 31.9%, exceeding that of the rest of the top 10 competitors combined.

20.     Zhangmen generates a substantial majority of its net revenues from its one-on-one tutoring services.  During 2019, 2020 and the three months ended March 31, 2021, Zhangmen stated that its one-on-one courses respectively accounted for approximately 94%, 93% and 87% of its net revenues.

21.     To complement its one-on-one tutoring services, Zhangmen launched its Zhangmen Small Class offering in the third quarter of 2020, which offers K-12 after-school tutoring services to

classes with up to 25 students.  The Company's paid student enrollments for small class tutoring

services reached 294,000 in the first quarter of 2021, representing an increase of 223% from 91,000

paid student enrollments in the third quarter of 2020.

22.     On May 19, 2021, Zhangmen filed with the SEC a Form F-1 registration statement.

The Form F-1 registration statement, as amended, was declared effective by the SEC on June 7,

2021.

23.     On June 2, 2021, Zhangmen filed with the SEC a Form F-6 registration statement to

register 100 million ADSs.  The Form F- 6 registration statement was declared effective by the SEC

on June 7, 2021.

24.     On June 9, 2017, Zhangmen filed with the SEC the Prospectus, which forms part of

the Registration Statement for the IPO, offering to sell to the public 3.623 million ADSs (excluding

the underwriters' option to purchase an additional 543,450 ADSs) at a price of $11.50 per ADSs.

Thereafter, Zhangmen sold 4,166,450 ADSs in the IPO (including the full exercise of the

underwriters' over-allotment option) raising a total of $47.9 million in gross offering proceeds.

25.     In the years prior to the IPO, China's online education market experienced explosive

growth.  According to Frost & Sullivan, China's online education market in terms of gross billings

increased from RMB74.4 billion in 2016 to RMB260.6 billion in 2020, representing a compound

average growth rate ("CAGR") of 36.8%.

26.     The rapid rate of growth in China's online education market has led to a sharp rise in

fraudulent activity, including false advertising, fabrication of teacher qualifications, exaggerated

student performance and price fraud.  In response to these scandals, the Chinese government sought

to clean up the industry by adopting stringent new regulations shortly before the IPO.  The true

scope and effect of these proposed measures were known to but undisclosed by defendants and were

reasonably likely to have a material adverse effect on Zhangmen's business and future operating results.

27.     Specifically, at the time of the IPO the Chinese government was in the process of implementing a sweeping crackdown on the Chinese tutoring industry and preparing rules that would effectively ban profit-making in the sector, essentially destroying Zhangmen's business and prospects.  This crackdown began months *before* the IPO, with draconian rules being discussed at the Chinese Communist Party's annual Parliamentary Session held in March 2021.  In addition, at the time of the IPO, regulators and government officials had already been engaged in a months-long investigatory campaign to root out misconduct in the tutoring sector and were preparing a set of harsh penalties, fines, and adverse regulatory actions to reign in the sector and prevent consumer abuses – including misconduct perpetrated by Zhangmen.  These adverse facts were not fully and accurately disclosed in the Registration Statement.

28.     Then, on July 23, 2021 – *less than two months after the IPO* – China unveiled a sweeping overhaul of its education sector, banning companies that teach the school curriculum from making profits, raising capital or going public.  These drastic measures effectively ended any potential growth in the for-profit tutoring sector in China.  For example, a *Reuters* report titled "China bars for-profit tutoring in core school subjects" stated that the "move threatens to decimate China's $120 billion private tutoring industry and triggered a heavy selloff in shares of tutoring firms traded in Hong Kong and New York."

29.     On July 26, 2021, Zhangmen issued a release providing an update on the new PRC policies, which stated in pertinent part as follows:

> *The Guidelines, among other things, require that all institutions offering after-school tutoring on academic subjects in compulsory education be registered as non-profit organizations, obtain approval from the relevant regulatory authorities, and comply with various operational requirements with respect to class hours,*

*faculty qualifications, tuition standards, advertising and others.  In addition, the Guidelines prohibit all such tutoring businesses from raising funds through stock exchange listings or other capital-related activities.  Foreign investments in school curriculum-based tutoring institutions through variable interest entity (VIE) arrangements, mergers and acquisitions or otherwise are also prohibited.  Listed companies are banned from raising capital through equity offerings to invest in businesses offering tutoring on academic subjects in compulsory education.  The Guidelines require that all businesses that have already violated these rules take corrective measures as appropriate*.  The Guidelines also provide that institutions offering after-school tutoring on high school curriculum, which is not part of compulsory education, shall also take into consideration of the Guidelines when conducting activities.

Although the interpretation and implementation of the Guidelines remain uncertain, we expect *the Guidelines to have material impacts on our existing business operations, financial condition and corporate structure*.[1]

30.     On August 25, 2021, Zhangmen issued a press release providing a further update on similar policies implemented by the Shanghai government and the implications for the Company's business, which stated in pertinent part as follows:

[T]he Shanghai Municipality Government issued the Shanghai Municipality's Measures to Further Reduce the Burden of Homework and After-School Tutoring on Students in Compulsory Education in Shanghai (the "Shanghai AST Measures") to implement the requirements set forth in the Opinions on Further Alleviating the Burden of Homework and After-School Tutoring for Students in Compulsory Education, published in July by the PRC central government (the "Central Government Opinions").  The Shanghai AST Measures stipulate that, among other things:

- *No new provider of after-school tutoring services on academic subjects in China's compulsory education system ("Academic AST") will be approved, while existing Academic AST providers shall be subject to review and re-registration as non-profit organizations*.

- *AST providers are strictly prohibited from providing Academic AST during any national holiday, weekend, winter and summer break period, subject to further restrictions over when Academic AST can be offered to students during weekdays*.

---

[1]     Unless otherwise noted, all emphasis that is both bold and italicized herein has been added.

- ***Tuition fees for Academic AST shall follow the guidelines from the government to prevent any excessive charging or excessive profit-seeking activities***.

- ***Academic AST providers are prohibited from financing its operations by way of listing its securities on stock exchanges or other capital market activities.  Listed companies may not invest in Academic AST providers through capital market fundraising activities, or acquire assets of Academic AST providers.  Foreign investment will be prohibited in Academic AST providers***.

- ***AST advertising shall be subject to enhanced oversight***.

The Company is committed to fully complying with the Shanghai AST Measures and similar measures to be adopted by other local governments, if any, to implement the requirements of the Central Government Opinions. ***Such measures are expected to have material impacts on its existing K-12 course business***.

31.     On November 19, 2021, Zhangmen announced that its auditor, Deloitte Touche Tohmatsu Certified Public Accountants LLP, had voluntarily resigned.

32.     Subsequent to the IPO, the price of Zhangmen ADSs plummeted.  As of the filing of this Complaint, Zhangmen ADSs trade at less than $2 per ADSs, more than ***80%*** below the IPO price.

## MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS IN THE REGISTRATION STATEMENT

33.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

34.     Specifically, the Registration Statement highlighted the strong growth and market demand for private education companies, like Zhangmen, in the PRC, stating in pertinent part as follows:

China has the largest online education market in the world.  According to the Frost & Sullivan Report, China's online education market in terms of gross billings

increased from RMB74.4 billion in 2016 to RMB260.6 billion in 2020, representing a CAGR of 36.8%, and is expected to further increase to RMB906.6 billion in 2025, representing a CAGR of 28.3% from 2020. China's online education market, which delivers courses to students via websites, mobile apps and other online platforms, has emerged as an increasingly popular approach to address the expanding market demand for education.

. . . China's online K-12 after-school tutoring market in terms of gross billings grew from RMB5.8 billion in 2016 to RMB85.5 billion in 2020, representing a CAGR of 95.9%, and is expected to further increase to RMB414.0 billion in 2025, representing a CAGR of 37.1% from 2020. . . .

*. . . **China's online K-12 one-on-one after-school tutoring market in terms of gross billings reached RMB14.7 billion in 2020, and is expected further increase to RMB51.5 billion in 2025, representing a CAGR of 28.5%. The online K-12 one-on-one after-school tutoring market in China is currently at an early development stage**. Despite its relatively short history, online K-12 after-school tutoring market is already more consolidated than the offline education market. The top five players, as a whole, are expected to grow faster than the overall online K-12 one-on-one after-school tutoring industry.*

Online K-12 small-class after-school tutoring has become increasingly popular as it provides a flexible, cost-effective and interactive education solution to students and parents. The gross billings of China's online K-12 small-class after-school tutoring market reached RMB2.5 billion in 2020, and is projected to reach RMB81.0 billion in 2025, representing a CAGR of 100.5%.

35.     The Registration Statement also disclosed that Zhangmen had been able to capitalize on the above-noted growth and market demand in the years leading up to the IPO, stating in pertinent part as follows:

*The success of our business model is evidenced by our rapid growth*. Paid student enrollments of our online one-on-one after-school tutoring increased by 43.2% from 380,517 in 2019 to 544,813 in 2020, and by 52.2% from 87,783 for the three months ended March 31, 2020 to 133,601 for the same period in 2021. Paid student enrollments of our online small-class after-school tutoring reached 294,397 in the first quarter of 2021, representing a 222.6% growth from 91,260 in the third quarter of 2020. Our net revenues increased by 50.6% from RMB2,668.7 million in 2019 to RMB4,018.4 million (US$613.3 million) in 2020, and by 19.9% from RMB1,122.7 million for the three months ended March 31, 2020 to RMB1,345.7 million (US$205.4 million) for the same period in 2021. Our gross billings increased by 36.3% from RMB3,855.3 million in 2019 to RMB5,254.4 million (US$802.0 million) in 2020, and by 73.1% from RMB762.0 million for the three months ended March 31, 2020 to RMB1,319.3 million (US$201.4 million) for the same period in 2021.

36.     The statements referenced in ¶¶34-35 above were materially false and misleading because they failed to disclose the following adverse facts which existed at the time of the IPO:

(a)     that PRC authorities were in the process of implementing sweeping new regulatory reforms on the private education industry in China including, among others, prohibitions on (i) profit-making by private education companies, (ii) engaging in core-curriculum tutoring on weekends and vacations, and (iii) capital-raising by companies like Zhangmen;

(b)     that the known risks, events and uncertainties noted in (a) above were reasonably likely to have a material adverse effect on the Company's business; and

(c)     that based on the foregoing, the statements in the Registration Statement concerning the Company's historical financial performance, market demand, and industry trends were materially incomplete, inaccurate and misleading.

37.     In addition, the Registration Statement was materially incomplete and omitted facts necessary to make the statements made therein not misleading with respect to recent regulatory developments in China and failed to disclose the most significant rules and regulations affecting Zhangmen's business and operations.  For example, the Registration Statement stated that a "Recent Development" in PRC regulations did not pose "material obstacles to [the Company] obtaining the private school operating permit," stating in pertinent part as follows:

**Recent Development**

The State Council promulgated the amended Regulations on the Implementation of the Law for Promoting Private Education of the PRC on April 7, 2021, or the Amended Implementation Regulations of Private Education Law, which will become effective on September 1, 2021.  The Amended Implementation Regulations of Private Education Law requires a private school engaging in online education activities using internet technology to obtain a private school operating permit.  As advised by our PRC counsel, Tian Yuan Law Firm, we may need to obtain the private school operating permit as an online tutoring service provider, according to the Amended Implementation Regulations of Private Education Law. We intend to apply for this permit when the regulatory authorities issue detailed rules setting forth the level of government authorities in charge of permit review and

issuance and when the government authorities start to accept applications around September 1, 2021.  We have already made filings with the regulatory authorities as an online after-school training institution according to Implementation Opinions on Regulating Online After-School Training issued by the Ministry of Education, together with certain other PRC government authorities, in 2019.  Based on our consultation with relevant government authorities, as we have made the foregoing filings, ***we do not perceive material obstacles to us obtaining the private school operating permit***.

38.     Similarly, the Registration Statement provided the following summary of the rules, regulations and regulatory environment applicable to Zangmen's business but left out the most impactful impending policy changes – including the outright ban on profit-making in the Chinese tutoring industry – stating in pertinent part as follows:

**Regulation Relating to Private Education**

\*     \*     \*

On April 7, 2021, the State Council promulgated the amended Regulations on the Implementation of the Law for Promoting Private Education of the PRC, or the Amended Implementation Regulations of Private Education Law, which will become effective on September 1, 2021.  The Amended Implementation Regulations of Private Education Law provides that, among others, carrying out online education activities using internet technology is encouraged by the State and shall be in compliance with internet management related laws and regulations.  A private school engaging in online education activities using internet technology shall obtain relevant private school operating permit.  Moreover, a private school engaging in online education activities using internet technology shall establish and implement internet security management systems and technical measures for security protection.  Upon discovery of any information of which the release or transmission is prohibited by relevant laws or regulations, the private school shall immediately stop the transmission thereof and take measures such as deletion so as to prevent the information from spreading.  Relevant records shall be kept and reported to the relevant competent authorities.

As advised by our PRC counsel, Tian Yuan Law Firm, we may need to obtain the private school operating permit as an online tutoring service provider, according to the Amended Implementation Regulations of Private Education Law.  We intend to apply for this permit when the regulatory authorities issue detailed rules setting forth the level of government authorities in charge of permit review and issuance and when the government authorities start to accept applications around September 1, 2021.  We have made filings with the regulatory authorities as an online after-school training institution according to Online After-School Training Opinions. ***Based on our consultation with relevant government authorities, as we have made the***

*foregoing filings, we do not perceive material obstacles for us to obtain the private school operating permit*.  For potential risks on our business due to the Amended Implementation Regulations of Private Education Law, see "Risk Factors – Risk Factors Related to Our Business and Industry – Certain aspects of our business operations may be deemed not to be in full compliance with PRC regulatory requirements regarding online private education.  *In addition, uncertainties exist in relation to new legislation or proposed changes in the PRC regulatory requirements regarding online private education, which may materially and adversely affect our business, financial condition and results of operations*."

**Regulation Relating to After-school Tutoring and Educational Apps**

On February 13, 2018, the MOE, the Ministry of Civil Affairs, the Ministry of Human Resources and Social Security and the SAMR jointly promulgated the Circular on Alleviating After-school Burden on Primary and Secondary School Students and Implementing Inspections on After-school Training Institutions, pursuant to which the government authorities will carry out a series of inspections on after-school training institutions and order those with material potential safety risks to suspend business for self-inspection and rectification and those without proper establishment licenses or school operating permits to apply for relevant qualifications and certificates under the guidance of competent government authorities.  Moreover, after-school training institutions must file with the local education authorities and publicly present the classes, courses, target students, class hours and other information relating to their academic training courses (primarily including courses on Chinese and mathematics).  After-school training institutions are prohibited from providing academic training services beyond the scope or above the level of school textbooks, or organizing any academic competitions (such as Olympiad competitions) or level tests for students of primary and secondary schools.  In addition, primary and secondary schools may not reference the student's performance in the after-school training institutions as one of admission criteria.

. . . The training content of after-school training institutions cannot exceed the corresponding national curricular standards and training progress shall not be more accelerated than the corresponding progress of local schools.  According to State Council Circular 80, after-school training institutions are also required to disclose and file relevant information regarding the institution, including their training content, schedule, targeted students and school timetable to the relevant education authority, and their training classes may not end later than 8:30 p.m. each day or otherwise conflict with the teaching time of local primary and secondary schools.  Course fees can only be collected for courses in three months or shorter installments.

*         *         *

The General Office of the MOE enacted the Notice of Strengthening the Management of Homework for Compulsory Education on April 8, 2021, which requires that the local governments shall implement prohibition measures on leaving homework as an important part of the daily supervision on after-school training

institutions in accordance with relevant regulations, and in order to avoid reducing the burden in schools but increasing the burden after-school, after-school training institutions shall not leave homework to primary and secondary school students.

**Regulation Relating to the Online After-School Training**

The MOE and certain other PRC government authorities jointly promulgated the Implementation Opinions on Regulating Online After-school Training, or the Online After-school Training Opinions, as effective on July 12, 2019.  The Online After-school Training Opinions is to regulate academic after-school training involving internet technology provided to students in primary and secondary schools. The Online After-School Training Opinions requires, among others, that online after-school training institutions should file with the competent provincial regulatory authorities of education and such regulatory authorities of education, jointly with other provincial government authorities, should review the filings and qualifications of the online after-school training institutions.

With respect to the filing requirements, the Online After-school Training Opinions provides, among others, that (i) an online after-school training institution should file with the competent provincial regulatory authorities of education after it obtains the ICP License and the grade evaluation report for the graded protection of cybersecurity; (ii) the materials need to be filed by the online after-school training institutions include, among others, the materials related to the institution (such as the information on their ICP Licenses and other relevant licenses), the management systems used for protection of personal information and cybersecurity, the training content and the training personnel; and (iii) the competent provincial regulatory authorities of education should promulgate local implementing rules on filing requirements, which should focus on training institutions, training content and training personnel.

. . . Each live-streaming course provided to students receiving compulsory education should not end later than 9:00 p.m., and no homework should be left for primary school students in Grade 1 and Grade 2.  The online after-school training platforms should have eye protection and parental supervision functions; (iii) the online after-school training institutions should not hire any teachers who are currently working at primary or secondary schools.  Training personnel of academic subjects are required to obtain necessary teacher qualification licenses. . . .  The prepaid fees can only be used for education and training purposes, and cannot be used for other investment activities.  The periods for which tuition is charged shall be consistent with its respective curriculum and the online after-school training institutions shall not engage in excessive marketing, make false or misleading promotion, or overstate the effect of the product.  If the prepaid fees are charged based on the number of classes, the prepaid fees are not allowed to be collected in a lump sum for more than 60 classes. . . .

On April 21, 2020, the Ministry of Human Resources and Social Welfare and other government authorities jointly promulgated the Notice of Implementing the

Phased Measures of "Taking Certificate after Starting Career" for Certain Occupations under COVID-19, pursuant to which all college graduates who are eligible for the teacher qualification examination and meet the requirements of teacher qualification regarding ideological and political criteria, language skills and physical conditions are allowed to start to engage in the related work of education before obtaining the teacher qualification licenses. The teacher qualification licenses would not be a mandatory precondition for college graduates if they are hired prior to December 31, 2020.

39.     The statements in the Registration Statement about the regulatory environment applicable to Zhangmen's business referenced in ¶¶37-38 above, including the boilerplate warning that "uncertainties exist in relation to new legislation or proposed changes in the PRC regulatory requirements regarding online private education, which may materially and adversely affect our business, financial condition and results of operations," were materially incomplete, inaccurate statements of material fact and omitted material information necessary to make the statements made not misleading. Specifically, the Registration Statement failed to disclose that PRC authorities were in the midst of a far-ranging regulatory crackdown on consumer fraud and market abuses in the for-profit tutoring industry at the time of the IPO (including for Zhangmen's own misconduct) and formulating a draconian set of rules and regulations following the Communist Party's March 2021 Parliamentary Session that included an outright ban on profit-making in the tutoring industry, strict limits on extracurricular educational activities which would severely curtail Zhangmen's business, and a prohibition on capital-raising and other financial activities critical to the Company's growth, expansion and continued operation.

40.     The Registration Statement also set forth a list of factors making an investment in the IPO risky, but misleadingly omitted the facts referenced in ¶¶36 and 39 above, which were the most important risks facing the Company at the time of the IPO, effectively posing an existential threat to the Company's business and which would render capital-raising activities such as the IPO itself

illegal.  Concerning new legislation or proposed changes in the PRC regulatory requirements in the

private education industry, the Registration Statement stated in pertinent part as follows:

> ***Significant uncertainties exist in relation to new legislation or proposed changes in the PRC regulatory requirements in the private education industry, which may materially and adversely affect our business, financial condition and results of operations.  In addition, certain aspects of our business operations may be deemed not to be in full compliance with PRC regulatory requirements regarding online private education and after-school training***.

> The private education industry in the PRC is subject to heightened and evolving regulations in various aspects.  Relevant rules and regulations are relatively new and evolving and could be changed by governmental authorities to affect the development of the education, in particular, the online private education markets from time to time.

> Pursuant to the amended Law for Promoting Private Education, or the amended Private Education Law, a private school must obtain a private school operating permit.  The State Council promulgated the amended Regulations on the Implementation of the Law for Promoting Private Education of the PRC on April 7, 2021, or the Amended Implementation Regulations of Private Education Law, which will become effective on September 1, 2021. . . .  We intend to apply for the private school operating permit when the regulatory authorities issue detailed rules setting forth the level of government authorities in charge of permit review and issuance and when the government authorities start to accept applications around September 1, 2021. ***According to our consultation with relevant government authorities, we do not perceive material obstacles for us to obtain a private school operating permit since we have made relevant required filings under the Online After-School Training Opinions*** as discussed below.  However, since the Amended Implementation Regulations of Private Education Law is newly published and has not come into effect, the interpretation and implementation of such new law remain uncertain, we cannot assure you that we will be able to obtain a private school operating permit and comply with other regulatory requirements under such new law and any additional related rules and regulations, if any, in a timely manner, or at all.  If we are not able to comply with the licensing requirement in a timely manner or at all, we may be subject to fines, confiscation of the gains derived from our non-compliant operations, mandatory modifications to our business practices, suspension of our non-compliant operations or claims for compensation of any economic loss suffered by our students or other relevant parties.

> In addition, certain official media reported recently that the Comprehensive Deepening Reform Committee of the PRC government, recently approved the Opinions on Alleviating the Burden of Homework and After-School Training for Primary and Secondary School Students, or the Opinions, the full context of which is yet to be published.

According to the media report, it was mentioned at the most recent meeting held by the Comprehensive Deepening Reform Committee that measures should be taken to reduce the after-school academic burden on primary and secondary school students.  Such proposed measures include: (i) strictly enforcing regulations against after-school tutoring institutions that fail to meet the relevant qualifications, have chaotic management, utilize unscrupulous tactics to collect money, utilize false advertising or collude with schools for inappropriate profit; (ii) setting appropriate fees standards to be charged by after-school tutoring institutions and strengthening the supervision of pre-payments by students; (iv) prohibiting inappropriate capital activities and profiteering in the after-school tutoring industry; and (iv) improving legislation to regulate the after-school tutoring institutions.

On June 2, 2021, the PRC government issued another article, which provides that the MOE's Double Burden Reduction Special Work Office will work with relevant government authorities to implement the Opinions, including: (i) improving the teaching quality of schools and controlling the total amount of written homework; (ii) increasing the quantity and quality of after-school services and enriching the content of such after-school services provided by schools to meet the market demand; and (iii) strengthening the governance of after-school tutoring institutions by examining and approving the establishment of after-school tutoring institutions, strengthening the supervision of training content, innovating methods of tuition fee management, standardizing training behavior, investigating and penalizing illegal training behaviors, and safeguarding the rights and interests of parents and students.

As the full context of the Opinions has not yet been published, there is material uncertainty with respect to its interpretation and implementation and potential impacts on online tutoring service providers like us.  We cannot preclude the risk that we may be subject to fines, penalties or regulatory orders, including orders to suspend our operations or to adjust or substantially limit our operations in various aspects (including advertising, fee standards or course schedule), we may also incur additional costs in complying with such laws, regulations or administrative measures, which may materially and adversely affect our business, financial conditions and results of operations.

Furthermore, the Ministry of Education, or the MOE, jointly with certain other PRC government authorities, promulgated the Implementation Opinions on Regulating Online After-School Training, or the Online After-School Training Opinions, effective on July 12, 2019.  The Online After-School Training Opinions are intended to regulate online after-school academic training provided to students in primary and secondary schools.  Among other things, the Online After-School Training Opinions require that online after-school training institutions file with the competent provincial education regulatory authorities and that such education regulatory authorities and other provincial government authorities jointly review these filings and the qualifications of the institutions making these filings.  The Online After-School Training Opinions also impose a number of regulations requiring, among other things, that (i) each class not last longer than 40 minutes and be taken at intervals of not less than 10 minutes; (ii) live streaming courses provided

to students receiving compulsory education not end later than 9:00 p.m.; (iii) the periods for which tuition is charged be consistent with its respective curriculum, and fees not be collected in a lump sum for more than 60 classes when charged based on the number of classes, or for a course length of more than three months when charged based on the length of the course, though the Online After-School Training Opinions do not specify which circumstances constitute charged based on number of classes or charged based on length of courses; (iv) the online after-school training institutions not engage in excessive marketing, make false or misleading promotion, or overstate the effect of the product; and (v) teachers providing after-school tutoring services related to academic curriculum are required to obtain the necessary teacher qualification licenses.  The Online After-School Training Opinions and relevant regulations further provide that governmental authorities of market regulation, cyberspace administration, industry and information technology and others shall cooperate with the educational authorities based on their respective scope of duties to regulate after-school training institutions.  See "Regulation – Regulation Relating to After-school Tutoring and Educational Apps."  Additionally, on March 23, 2021, the State Council's Office of Education Steering Committee released an article alerting parents of K-12 students about after-school tutoring service providers' collection of tuition fees in ways that are in violation of the Online After-School Training Opinions.

Moreover, the MOE, jointly with certain other PRC government authorities, issued the Opinions on Guiding and Regulating the Orderly and Healthy Development of Educational Mobile Apps on August 10, 2019, or the Opinions on Educational Apps, which requires, among others, mobile apps that offer services for school teaching and management, student learning and student life, or home-school interactions, with school faculty, students or parents as the main users, and with education or learning as the main application scenarios, be filed with the competent provincial regulatory authorities for education.  In addition, the General Office of the MOE enacted the Notice of Strengthening the Management of Homework for Compulsory Education on April 8, 2021, which prohibits after-school training institutions from assigning homework to primary and secondary school students. Furthermore, the Minors Protection Law, as amended in October 2020, which took effect on June 1, 2021, provides that after-school training institutions may not provide primary school curriculum education to minors that are not yet school age. See "Regulation – Regulation Relating to After-school Tutoring and Educational Apps."

***We have completed the required filings in accordance with the Online After-School Training Opinions with respect to most of our online after-school tutoring programs, training contents and teachers, and we are currently in the process of completing filings or updating the filing information for the rest of our tutoring programs, training contents and teachers.  In addition, we have completed the filing requirements for all of our after-school online tutoring apps that are in formal operations as required under the Opinions on Educational Apps***.  As the Online After-School Training Opinions and the other laws and regulations discussed above are relatively new and evolving, we cannot assure you that we are in full

- 17 -

compliance with all relevant rules.  The relevant governmental authorities have significant discretion in interpreting and implementing, and may, from time to time, conduct inspections on our compliance with such laws and regulations and their relevant local implementation rules.  Failure to comply with these applicable regulatory requirements or promptly complete filings may subject us to fines, regulatory orders to suspend our operations or other regulatory and disciplinary sanctions.  For example, as of March 31, 2021, 69.6% of our full-time K-12 teachers who are required by law to obtain teacher qualification licenses have done so, and 2.3% additional full-time K-12 teachers have passed the teacher qualification exam, which is the prerequisite for obtaining a teacher qualification license.  Most of our part-time teachers have not yet obtained the necessary teacher qualification licenses. In addition, we cannot assure you whether our educational content, including our optional after-class exercises, would be deemed homework assignments by the relevant regulators under these new laws, in which case we may be subject to penalties or be required to remove such content.  ***We are making efforts to comply with such laws and regulations by, for example, requiring our K-12 teachers to timely obtain the necessary teacher qualification licenses.  As of the date of this prospectus, we have not received any written notice of warning from, or been subject to penalties imposed by, the relevant government authorities for any of the above alleged failure by us to comply with such laws and regulations***.

As the Amended Implementation Regulations of Private Education Law is newly published and has not come into effect, we currently have limited visibility into its interpretation and implementation, such as requirements to obtain the permit and level of governmental authority in charge of review and issuance of the permit. ***There also exist uncertainties with respect to interpretation and application of other existing laws and regulations, as well as whether and how PRC government authorities would further promulgate new laws and regulations applicable to online training institutions in various aspects including, among others, the means and timing of fee collection, pricing, advertisements and promotion, prepaid tuitions under supervision, teachers' qualification licenses, tuition refunds, course time and content, homework arrangement, student enrollment, and those promulgated to apply more stringent social and ethical standards in the education sector in general***.  There is no assurance that we can comply with any newly promulgated laws and regulations in a timely manner or at all, and any failure to comply may materially and adversely affect our business, financial condition and results of operations.

41.     The statements referenced in ¶40 above were materially false and misleading because they failed to disclose the following adverse facts which existed at the time of the IPO:

(a)     that PRC authorities were ***already*** in the process of implementing sweeping new regulatory reforms on the private education industry in China including, among others,

prohibitions on (i) profit-making by private education companies, (ii) engaging in core-curriculum tutoring on weekends and vacations, and (iii) capital-raising by companies like Zhangmen; and

(b)   that these impending regulatory changes posed an existential threat to the Company's business, operations and prospects.

42.   Furthermore, Item 4 of Form F-1, via reference to Form 20-F, required the Registration Statement to disclose "***information regarding any governmental***, economic, fiscal, monetary ***or political policies or factors that*** have materially affected, or ***could materially affect, directly or indirectly, the company's operations or investments*** by host country shareholders."

43.   In this regard, Form F-1 makes reference to the SEC's interpretive release (No. 33-6835) dated May 18, 1989 (the "Interpretative Release") for guidance in preparing the discussion and analysis by management.

44.   The Interpretative Release states in pertinent part as follows:

> *A disclosure duty exists where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation*.

*   *   *

> *Events that have already occurred or are anticipated often give rise to known uncertainties*.  For example, a registrant may know that a material government contract is about to expire.  The registrant may be uncertain as to whether the contract will be renewed, but nevertheless would be able to assess facts relating to whether it will be renewed.  More particularly, the registrant may know that a competitor has found a way to provide the same service or product at a price less than that charged by the registrant, or may have been advised by the government that the contract may not be renewed.  The registrant also would have factual information relevant to the financial impact of non-renewal upon the registrant.  ***In situations such as these, a registrant would have identified a known uncertainty reasonably likely to have material future effects on its financial condition or results of operations, and disclosure would be required***.

45.   Further, Item 3 of Form F-1 required the Registration Statement to furnish the information called for under Item 105 of Regulation S-K, 17 C.F.R. §229.105, *Risk Factors*.  Item

503 of Regulation S-K required the Registration Statement to disclose the most significant matters making an investment in the IPO risky.

46.     The Registration Statement violated Items 3 and 4 by failing to disclose the uncertainties created by the adverse facts alleged in ¶¶36, 39 and 41 above concerning the ongoing crackdown on market abuses and consumer fraud in the for-profit tutoring industry and impending draconian regulatory overhaul because these facts represented known events, trends, and uncertainties that were likely to (and did) have a material unfavorable impact on Zhangmen's sales, revenues and income from continuing operations.  The Registration Statement also violated these Items by failing to disclose the risks attendant to the adverse facts alleged in ¶¶36, 39 and 41 above because these specific risks were not disclosed even though they were some of the most significant factors that made an investment in Zhangmen ADSs speculative or risky.  Once the Registration Statement spoke about regulatory matters, it had a duty to speak completely and truthfully, including disclosing the true extent of the draconian measures that were *already* being formulated at the time of the IPO and reasonably likely to have a material adverse effect on Zhangmen's business and operations and that made an investment in the IPO risky.

47.     As of the filing of this Complaint, Zhangmen's ADSs trade at less than $2 per ADSs, more than *80%* less than the IPO price.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action as a class action on behalf of a class consisting of all purchasers of Zhangmen ADSs in or traceable to the IPO (the "Class").  Excluded from the Class are defendants and their families, the officers, directors and affiliates of the defendants, and members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

49.     The members of the Class are so numerous that joinder of all members is impracticable.  Zhangmen ADSs are actively traded on the NYSE and 4.2 million ADSs were sold in the IPO.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Zhangmen or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

50.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

51.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

52.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the Securities Act;

(b)     whether statements in the Registration Statement misrepresented material facts about the business, operations and risks of investing in Zhangmen; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

53.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violations of §11 of the Securities Act
### Against All Defendants

54.     Plaintiff repeats and re-alleges each and every allegation contained above.

55.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.  For purposes of this Count, plaintiff does not claim that defendants engaged in intentional or reckless misconduct or that defendants acted with fraudulent intent.

56.     The Registration Statement was inaccurate and contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not inaccurate, and omitted to state material facts required to be stated therein.

57.     Zhangmen was the registrant for the IPO.  As an issuer of securities to the public, Zhangmen is strictly liable to plaintiff and the Class for the materially inaccurate statements in the Registration Statement, the failure of the Registration Statement to be complete, and the failure of the Registration Statement to disclose material information required pursuant to the regulations governing its preparation.

58.     The Individual Defendants and the Cogency Global Defendants signed the Registration Statement either personally or through designated representatives and caused its issuance.  The Individual Defendants and the Cogency Global Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement.  The Individual Defendants and the Cogency Global Defendants had a

duty to ensure that such statements were true and accurate and that there were no omissions of material facts that would make the statements in the Registration Statement inaccurate. By virtue of their failure to exercise reasonable care, the Registration Statement contained inaccurate misrepresentations and/or omissions of material fact. As such, the Individual Defendants and the Cogency Global Defendants are liable to plaintiff and the Class.

59.     The Underwriter Defendants failed to perform adequate due diligence in connection with their role as underwriters and were negligent in failing to ensure that the Registration Statement for the IPO was prepared properly and accurately. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein. As such, the Underwriter Defendants are liable to plaintiff and the Class.

60.     The defendants named in this Count were responsible for the contents and dissemination of the Registration Statement. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not inaccurate. By reasons of the conduct herein alleged, each defendant violated and/or controlled a person who violated §11 of the Securities Act.

61.     At the time of the purchases of Zhangmen ADSs, plaintiff and the other members of the Class were without knowledge of the facts associated with the wrongful conduct alleged herein. As a result of defendants' violations, the price of Zhangmen ADSs declined substantially and plaintiff and other members of the Class sustained damages.

## COUNT II

### For Violation of §15 of the Securities Act
### Against Zhangmen, Cogency Global and the Individual Defendants

62.     Plaintiff repeats and re-alleges each and every allegation contained above.

63.     This Count is asserted by plaintiff against Zhangmen, Cogency Global and the Individual Defendants for violations of §15 of the Securities Act, 15 U.S.C. §77o.  For purposes of this Count, plaintiff does not claim that any of the defendants named in this Count engaged in intentional or reckless misconduct or acted with fraudulent intent.

64.     As detailed herein, each of the defendants committed primary violations of the Securities Act, or are directly responsible and primarily liable for any such violations, by committing conduct in contravention of §11 of the Securities Act or employing a violator.

65.     The Individual Defendants acted as controlling persons of Zhangmen within the meaning of §15 of the Securities Act.  By reason of their ownership interest, senior management positions and/or directorships at the Company, the Individual Defendants individually, and acting pursuant to a common plan, had the power to influence and exercised the same to cause Zhangmen to engage in the conduct complained of herein and were therefore control persons of Zhangmen.  By reason of such conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act. Zhangmen controlled the Individual Defendants, and all of its employees.

66.     Cogency Global, as De Vries's employer, controlled De Vries by virtue of their employment relationship.

67.     Each of the defendants named in this Count was a culpable participant in the violation of §11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and/or having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and the Class, prays for judgment as follows:

A.     Determining this action to be a class action properly maintained pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, designating plaintiff as Lead Plaintiff and

certifying Lead Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure, and designating Lead Counsel as Class Counsel;

B.    Awarding plaintiff and the other members of the Class damages together with interest thereon;

C.    Awarding plaintiff and the other members of the Class the costs and expenses of this litigation, including reasonable attorneys' fees, experts' fees, and other costs and disbursements; and

D.    Awarding plaintiff and the other members of the Class such other and further relief as may be just and proper under the circumstances.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  November 19, 2021              ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                           SAMUEL H. RUDMAN

*s/ Samuel H. Rudman*

SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

JOHNSON FISTEL, LLP
RALPH M. STONE
1700 Broadway, 41st Floor
New York, NY  10019
Telephone:  212/292-5690
212/292-5680 (fax)
ralphs@johnsonfistel.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

SAURAV BANERJEE ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.    Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this <u>17</u> day of November, 2021.

DocuSigned by:

A1B49D02903744E...

_____
SAURAV BANERJEE

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Stock**

| Date<br>Acquired | Amount of<br>Shares Acquired | Price |
|---|---|---|
| 06/30/2021 | 1,000 | $18.66 |

| Date<br>Disposed | Amount of<br>Shares Disposed | Price |
|---|---|---|
| 10/22/2021 | 1,000 | $1.80 |

Prices listed are rounded up to two decimal places.