**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAURAV BANERJEE, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No.  1:21-cv-09634-JPO |
| vs. | Hon. J. Paul Oetken |
| ZHANGMEN EDUCATION INC., YI ZHANG, RICKY KWOK YIN NG, TENG YU, COGENCY GLOBAL INC., COLLEEN A. DE VRIES, MORGAN STANLEY & CO. LLC and CREDIT SUISSE SECURITIES (USA) LLC, | <u>Class Action</u> |
| Defendants. | **JURY TRIAL DEMANDED** |

**AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF**
**FEDERAL SECURITIES LAWS**

Lead Plaintiff Yanhong Chen ("Plaintiff"), individually and on behalf of all others similarly

situated, by her undersigned attorneys, for Plaintiff's Amended Complaint against Defendants,

alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and

information and belief as to all other matters, based upon, *inter alia*, the investigation conducted

by and through Plaintiff's attorneys, which included, among other things, a review of the

Defendants' public documents, conference calls and announcements made by Defendants,

Zhangmen Education Inc.'s ("Zhangmen" or the "Company") filings with the United States

("U.S.") Securities and Exchange Commission ("SEC"), press releases published by and regarding

Zhangmen, analysts' reports and advisories about the Company, regulatory filings and press

accounts in the People's Republic of China, a private investigation, and information obtainable on

the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all those who purchased or otherwise acquired the American Depositary Shares ("ADSs") of Zhangmen in or traceable to the Company's initial public offering (the "IPO"), conducted on or about June 8, 2021, pursuant to the IPO prospectus (the "Prospectus") and Form F-1 registration statement, as amended (together with the Prospectus, the "Registration Statement").  Excluded from the Class are Defendants, the officers and directors of the Company or of any entity Defendant, members of Defendants' immediate families and their legal representatives, heirs, successors or assigns, and any entity in which the Company, any Defendant, or the officers and directors of the Company or of any entity Defendant have or had a controlling interest.  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2.      Incorporated under the laws of the Cayman Islands, Zhangmen is a holding company focused on providing personalized online tutoring services to K-12 students in the People's Republic of China ("China" or the "PRC").  The Company's core course offerings encompass both one-on-one and small-class after-school tutoring services covering all core K-12 academic subjects.

3.      Zhangmen claims to be the largest one-on-one after-school tutoring service provider for K-12 students in China, in terms of gross billings since 2017.

4.      At least since 2019, Zhangmen has been in the crosshairs of Chinese market regulators as a result of its illegal and abusive business practices.  On November 18, 2019, the

Hongkou Administration for Market Regulation announced that it had fined Zhangmen and ordered it to stop publishing illegal and false advertisements.

5.      In January 2021, powerful institutions within the Chinese Communist Party ("CCP") and PRC government made clear within China that they would reform the private tutoring markets in which Zhangmen operated.  The Central Commission for Discipline Inspection, the highest internal enforcement division of the Chinese Communist Party, and the National Supervision Commission of the PRC released an article warning about reforms of abuses by private education companies, especially those focusing on 1-on-1 tutoring like Zhangmen.  At approximately the same time, China's Minister of Education warned that "great efforts would be made to regulate and rectify after-school tutoring institutions."

6.      China's President Xi Jinping echoed these warnings on March 6, 2021, stating that China will "resolutely reform all activities that infringe on [the People's] interests under the banner of education."

7.      On June 1, 2021, the State Administration for Market Regulation announced that the Shanghai Administration for Market Regulation had fined Zhangmen for additional false advertising and misleading pricing violations.  According to a report on Shine, a website focusing on Chinese domestic news: "Zhangmen.com was found to have exaggerated its number of applicants, the background of its teachers and its 'magic' in accurately predicting the content of examination papers for national college entrance exams."  *See* Hu Min, "Authorities crack down on education-training schools" (June 1, 2021), available at https://www.shine.cn/news/metro /2106019932/.  These fines, and fines imposed at that time upon other after-school tutoring companies, were a direct response to President Xi's call to "resolutely reform" the abuses in that

sector, and the Minister of Education's warning about increased efforts to "regulate and rectify after-school tutoring institutions."

8.    Three days later, on June 4, 2021, Zhangmen filed with the SEC its final amendment to the Registration Statement on Form F-1/A, which incorporated and included the Prospectus for investors (in final form other than pricing information, which was added to the post-IPO filing of the final Prospectus on Form 424B3 on June 9, 2021).

9.    On June 7, 2021, Zhangmen sent the SEC a formal letter requesting that the SEC accelerate the effectiveness of its Registration Statement to 4:30 p.m. Eastern that day, to facilitate a June 8, 2021 IPO.  Pursuant to Zhangmen's request, the SEC declared the Registration Effective on June 7, 2021.

10.    On or around June 8, 2021, Zhangmen conducted the IPO, selling 4,166,450 ADSs priced at $11.50 per ADS.

11.    The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

12.    Specifically, the Registration Statement failed to disclose that:

(a) Zhangmen "exaggerated its number of applicants, the background of its teachers and its 'magic' in accurately predicting the content of examination papers for national college entrance exams," and engaged in fraudulent pricing practices;

(b) as a result of these abusive practices, Zhangmen had already put itself and the entire private tutoring industry in the crosshairs of Chinese regulators;

(c) PRC authorities were *already* in the process of implementing sweeping new regulatory reforms on the private education industry in China including, among others, prohibitions on (1) profit-making by private education companies, (2) engaging in core-curriculum tutoring on weekends and vacations, and (3) capital-raising by companies like Zhangmen;

(d) these impending regulatory changes posed an existential threat to the Company's business, operations and prospects; and

(e) as a result, the Registration Statement was materially false and/or misleading and failed to state information required to be stated therein.

13.     On July 9, 2021, Zhangmen announced that it had demoted Defendant Ng from Chief Financial Officer to Vice President of Liberal Education Business.

14.     On July 23, 2021, less than two months after the IPO, China unveiled the rules it had said since January 2021 were forthcoming and banned after-school tutoring companies that teach the school curriculum from making profits, raising capital, or going public.  These measures effectively ended any potential growth in the for-profit tutoring sector in China.

15.     On November 19, 2021, Zhangmen announced that its auditor, Deloitte Touche Tohmatsu Certified Public Accountants LLP, had voluntarily resigned.

16.     On December 31, 2021, Zhangmen announced that it was changing the ratio of ADS to Ordinary shares in order to implement "the same effect as a one-for-eight reverse ADS split."

17.     Zhangmen's ADSs slumped persistently since its IPO.  As of the filing of this Complaint, Zhangmen's ADSs trade at less than $1.50 per ADS, down more than 98% from its split-adjusted IPO price.

18.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Zhangmen's securities, Plaintiff and other Class members have suffered substantial losses and damages.

## JURISDICTION AND VENUE

19.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

21.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).  The acts and conduct complained of herein occurred, in substantial part, in this Judicial District, as the IPO was conducted in this Judicial District.  In addition, Zhangmen's agent for service of process in the U.S. is located in this Judicial District, and the ADSs are listed and trade on the New York Stock Exchange ("NYSE"), a national stock market based in this Judicial District.

22.     Zhangmen's Registration Statement indicates that the Company has selected this Judicial District as the venue for disputes in its Articles of Association and ADS deposit agreement.

23.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

24.     Plaintiff, as set forth in her previously-filed Certification, purchased Zhangmen ADSs pursuant to and traceable to the Registration Statement issued in connection with the IPO, and suffered damages as a result of the federal securities law violations alleged herein.

25.     Defendant Zhangmen, based in Shanghai, China, is an education company focused on providing personalized online courses to K-12 students in China.  The Company's ADSs trade on the NYSE under the ticker symbol "ZME," with each ADS at the time of the IPO representing nine Class A ordinary shares and currently representing seventy-two Class A ordinary shares.

26.     Defendant Yi Zhang ("Zhang"), Zhangmen's co-founder, served as Chairman of the Company's Board of Directors and as its Chief Executive Officer at the time of the IPO. Defendant Zhang signed the defective Registration Statement.

27.     Defendant Ricky Kwok Yin Ng ("Ng") served as a Director and the Chief Financial Officer of the Company at the time of the IPO.  Following the IPO, Defendant Ng was demoted to serve as Vice President of its Liberal Education Business.  Defendant Ng signed the defective Registration Statement.

28.     Defendant Teng Yu ("Yu"), Zhangmen's co-founder, served as a Director of the Company at the time of the IPO.  Defendant Yu signed the defective Registration Statement.

29.     Defendants Zhang, Ng, and Yu are collectively referred to herein as the "Individual Defendants."

30.     Defendant Cogency Global Inc. ("Cogency Global") is a Delaware corporation whose principal executive office is located at 122 East 42nd Street, 18th Floor New York, NY 10168.  Defendant Cogency Global signed the defective Registration Statement in New York, New York as the "duly authorized representative in the United States of Zhangmen Education Inc." via the signature of its Senior Vice President, Colleen A. DeVries.  Additionally, Defendant Zhangmen designated Cogency Global as its agent upon whom process may be served in any action brought against it under the securities laws of the United States.

31.     Defendant Colleen A. De Vries ("De Vries"), at all relevant times, was Zhangmen's authorized U.S. representative in connection with her position as a Senior Vice President of Cogency Global. Defendant De Vries signed the defective Registration Statement in New York, New York on her own behalf and on behalf of Cogency Global.

32.     Defendants Cogency Global and De Vries are referred to herein as the "Cogency Global Defendants."

33.     Defendants Morgan Stanley & Co. LLC ("Morgan Stanley") and Credit Suisse Securities (USA) LLC ("Credit Suisse") each served as underwriters and lead underwriter representatives for the IPO. Defendants Morgan Stanley and Credit Suisse are collectively referred to herein as the "Underwriter Defendants."

34.     The Underwriter Defendants participated in the drafting and dissemination of the defective Registration Statement for the IPO and failed to perform adequate due diligence in connection with their roles as underwriters. As a result, the Underwriter Defendants were negligent in failing to ensure that the defective Registration Statement for the IPO was prepared accurately and in accordance with the rules governing its preparation. Collectively, the Underwriter Defendants and their underwriting syndicate received underwriting discounts and commissions of approximately $3.3 million in connection with the IPO. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

35.     Unless otherwise noted, Defendant Zhangmen, the Individual Defendants, the Cogency Global Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background to the IPO

36.     Incorporated under the laws of the Cayman Islands, Zhangmen is a holding company focused on providing personalized online tutoring services to K-12 students in China.

The Company's core course offerings encompass both one-on-one and small-class after-school tutoring services covering all core K-12 academic subjects.

37.     According to Frost & Sullivan, a U.S. market research and analysis consulting firm, Zhangmen is, and has been, the largest online K-12 one-on-one after-school tutoring service provider in China in terms of gross billings, with a 2020 market share of 31.9%, exceeding that of the rest of the top 10 competitors combined.

38.     Zhangmen generates an overwhelming majority of its net revenues from its one-on-one tutoring services. During 2019, 2020, and the three months ended March 31, 2021, Zhangmen stated that its one-on-one courses respectively accounted for approximately 94%, 93%, and 87% of its net revenues.

39.     To complement its one-on-one tutoring services, Zhangmen launched its Zhangmen Small Class offering in the third quarter of 2020, which offers K-12 after-school tutoring services to classes with up to 25 students. The Company's paid student enrollments for small class tutoring services reached 294,000 in the first quarter of 2021, representing an increase of 223% from 91,000 paid student enrollments in the third quarter of 2020.

40.     In the years prior to the IPO, China's online education market experienced explosive growth. According to Frost & Sullivan, China's online education market in terms of gross billings increased from RMB74.4 billion in 2016 to RMB260.6 billion in 2020, representing a compound average growth rate of 36.8%.

41.     The rapid rate of growth in China's online education market led to a sharp rise in fraudulent activity, including false advertising, fabrication of teacher qualifications, exaggerated student performance, and price fraud. In response to these scandals, the Chinese government sought to clean up the industry by adopting stringent new regulations shortly before the IPO. The

true scope and effect of these proposed measures were known to but undisclosed by Defendants and were reasonably likely to have a material adverse effect on Zhangmen's business and future operating results.

42.     The CCP had been targeting Western-financed private education companies for reform since at least February 2019, when the CCP and China's State Council proposed a 2018-2022 plan for modernizing Chinese education, which contained a "Negative List" of practices that the CCP intended to reform, including restricting foreign investment into K-9 education.

43.     Zhangmen, and the one-on-one tutoring industry it dominated, were in the crosshairs of Chinese regulators long before the IPO.  For example, in November 2019, the Hongkou Administration for Market Regulation (虹口区市场监管局) ordered Zhangmen to stop publishing false and illegal advertisements, and fined it for past transgressions.

44.     By January 2021, the CCP and PRC government made clear to Chinese education companies that they would reform the private tutoring markets in which Zhangmen operated.  In January 2021, the Central Commission for Discipline Inspection, the highest internal enforcement division of the CCP, jointly with the National Supervision Commission, of the PRC released an article warning about reforms of abuses by private education companies, especially those focusing on 1-on-1 tutoring like Zhangmen.

45.     This warning shot from the CCP's Central Commission for Discipline Inspection and the PRC's National Supervision Commission signaled that the abuses of Zhangmen and other private tutoring companies ran afoul of official policy.  These two powerful institutions, which share the same physical office space and are deeply intertwined, are empowered to "implement party charter and regulations, comply with and implement the party line, general and specific party policies, and resolutions ... and promote comprehensive and strict party governance (全面

从严治党)." *See* https://www.ccpwatch.org/single-post/2019/07/15/The-National-Supervision-Commission-From-Punishing-the-Few-toward-Managing-the-Many.

46.     On January 7, 2021, at a national education conference, China's Minister of Education Chen Baosheng confirmed that "great efforts would be made to regulate and rectify after-school tutoring institutions" (大力度治理整 顿校外培训机构, 目标是减轻学生和家庭负担).   The minister also mentioned the problem of false advertising by private education companies.

47.     At the end of January 2021, the Office of the Education Supervision Committee of the State Council (国务院教育督导委员会办公室) held, by video, its official conference on supervision.   There, a number of Provincial education departments identified reducing the "Double Burden" imposed by private off-campus tutoring by companies like Zhangmen on top of an already large homework burden as the most important task for education supervision for 2021.

48.     On March 6, 2021, China's President Xi Jinping confirmed that the PRC will "resolutely reform all activities that infringe on [the People's] interests under the banner of education."   And, at the Chinese People's Political Consultative Conference, President Xi described the after-school tutoring business as a "social problem."   Consistent with President Xi's mandate, draconian rules to limit private afterschool tutoring were discussed at the Chinese Communist Party's annual Parliamentary Session held in March 2021.   Liang Tingfu, a Beijing-based educational scholar, warned that the coming crackdown might be more severe than  previous reforms. *See* https://supchina.com/2021/03/17/uncertainty-roils-chinese-private-tutoring-industry-over-feared-regulatory-crackdown/.

49.     According to SupChina, a New York-based publisher of China-focused news, the Chinese Communist Party also made abuses at private tutoring companies a focus of its 3.15 Gala,

an annual consumer rights show designed to expose irregular practices and shady behavior in various industries.

50.     On March 31, 2021, the Ministry of Education stated that it had recognized reducing the "Double Burden" of after-school tutoring on top of homework as a key task for 2021.

51.     Yuan Xilu, head of the PRC's State Administration for Market Regulation, indicated that the regulator conducted an inspection of Zhangmen in May 2021, which revealed  false advertising and "price fraud." *See* https://global.chinadaily.com.cn/a/202106/01/WS60b5d474a31024ad0bac2d30.html.

52.     In May 2021, Yu Minhong, founder of competitor New Oriental Education, told Shanghai news outlet ThePaper that the quick success sought by investors does not work in the education industry, and a crackdown on online education, which he said was full of "chaotic misbehavior," was "imminent."  *See*  http://epaper.chinadaily.com.cn/a/202105/19/WS60a43ecca31099a23435630e.html.

53.     On May 19, 2021, Zhangmen filed with the SEC a Form F-1 registration statement. The Form F-1 identified Zhangmen as the issuer and Morgan Stanley & Co. LLC and Credit Suisse Securities (Usa) LLC as the underwriters.  It was signed by Defendants Yi Zhang, Ricky Kwok Yin Ng, Teng Yu, Cogency Global Inc., and Colleen A. De Vries.

54.     On May 21, 2021, Xi Jinping presided over a meeting of the Central Committee of the Chinese Communist Party, and the Central Committee's Commission for Deepening Overall Reform, during which the Central Committee adopted "The Opinions of Further Reducing the Burden of Homework and Off-Campus Tutoring for Students in the Compulsory Education Period," (hereafter, the "Opinions").  Among other things, the Committee expressed concerns that too much after-school tutoring could affect students' physical and mental health.

55.     On May 31, 2021, Bloomberg analyst Catherine Lim warned that the regulatory reforms could "decimate revenue throughout the industry."  *See* https://fortune.com/2021/05/31/ china-edtech-private-tutoring-ipo-delay-crackdown-student-overwork/.   In light of the reforms, several other Chinese EdTech firms, including VIPKid, Huohua Siwei, Zuoyebang and Yuanfuda, scrapped or postponed plans for initial public offerings.  *Id.*

56.     On June 1, 2021, the State Administration for Market Regulation issued an article describing the abuses rampant in after-school tutoring companies.  The announcement outlined 15 fines that were imposed in May 2021 by the Shanghai Administration for Market Regulation, including fines imposed upon Zhangmen for serious false advertising and misleading pricing violations.  One local news report described the legal action against Zhangmen as follows: ***"Zhangmen.com was found to have exaggerated its number of applicants, the background of its teachers and its 'magic' in accurately predicting the content of examination papers for national college entrance exams."*** *See* Hu Min, "Authorities crack down on education-training schools" (June 1, 2021), available at https://www.shine.cn/news/metro/2106019932/.   Another explained that regulators assessed Zhangmen One-on-One "with a ***severe fine*** of 10 million yuan," finding that it ***"exaggerated the number of course applicants and fabricated teachers' teaching experience."*** *See* https://pandaily.com/zhangmen-education-lists-on-nyse- amid-heightened-scrutiny-of-chinas-online-tutoring-market/.

57.     The fines imposed upon Zhangmen were a direct result of the CCP's "great efforts … to reform and rectify" industry abuses described above.  As China Daily explained, "[t]he new clampdown follows concern over competition to ensure that children go to good schools, which has triggered anxiety among parents and students. Parents have also been unhappy with

misconduct such as false advertising and difficulty in obtaining refunds for lesson fees." *See* http://epaper.chinadaily.com.cn/a/202105/19/WS60a43ecca31099a23435630e.html.

58.     On June 4, 2021, Zhangmen filed with the SEC its final amendment to the Registration Statement on Form F-1/A, which incorporated and included the Prospectus for investors (in final form other than pricing information, which was added to the post-IPO filing of the final Prospectus on Form 424B3 on June 9, 2021).  Page i of the Registration Statement directed investors that they should avoid considering any external information, including the reports of inspections, fines, and regulatory and policy actions described in Paragraphs 41 to 57 above: "You should rely only on the information contained in this prospectus or in any free writing prospectus that we authorize to be distributed to you. We and the underwriters have not authorized anyone to provide you with any information other than that contained in this prospectus or in any free writing prospectus prepared by or on behalf of us or to which we have referred you, and neither we, nor the underwriters take responsibility for any other information others may give you."

59.     On June 7, 2021, Zhangmen sent the SEC a formal letter requesting that the SEC accelerate the effectiveness of its Registration Statement to 4:30 p.m. Eastern that day, to facilitate a June 8, 2021 IPO.  Pursuant to Zhangmen's request, the SEC declared the Registration Effective on June 7, 2021.

60.     The Form F-1 registration statement, as amended, was declared effective by the SEC on June 7, 2021.

61.     Zhangmen also filed with the SEC a Form F-6 registration statement to register 100 million ADSs.  The Form F- 6 registration statement was declared effective by the SEC on June 7, 2021.

62.    On June 8, 2021, Zhangmen conducted the IPO, selling 4,166,450 ADSs priced at $11.50 per ADS pursuant to the defective Registration Statement (including the full exercise of the underwriters' over-allotment option), raising a total of $47.9 million in gross offering proceeds.

**Materially False and Misleading Statements Issued in the Registration Statement**

63.    The Registration Statement highlighted the strong growth and market demand for private education companies, like Zhangmen, in the PRC, stating in pertinent part as follows: "China's online K-12 one-on-one after-school tutoring market in terms of gross billings reached RMB14.7 billion in 2020, and is expected further increase to RMB51.5 billion in 2025, representing a CAGR of 28.5%. The online K-12 one-on-one after-school tutoring market in China is currently at an early development stage."

64.    The statements identified in Paragraph 63 above were materially false and misleading when made because the Chinese online K-12 one-on-one after-school tutoring market was not "at an early development stage" but in fact existentially threatened by regulatory reform discussed openly within China since at least January 2021 as outlined in Paragraphs 5 to 7 and 41 to 57 above, and because they omitted the following facts necessary to make the statements not misleading under the circumstances in which they were made: (a) that the growth had been driven by false advertising and fraudulent pricing by Zhangmen and its peers; (b) that Zhangmen and its peers had already been fined by Chinese regulators for such fraudulent practices; (c) that the growth had already reached a point where the burdens the services imposed upon Chinese students and their families was oppressive and unsustainable; and (d) that Chinese regulators had already made clear within China that they intended to reform the industry to reduce these burdens.

65.     The Registration Statement also touted that Zhangmen had been able to capitalize on the above-noted growth and market demand in the years leading up to the IPO, stating in pertinent part as follows:

> ***The success of our business model is evidenced by our rapid growth.*** Paid student enrollments of our online one-on-one after-school tutoring increased by 43.2% from 380,517 in 2019 to 544,813 in 2020, and by 52.2% from 87,783 for the three months ended March 31, 2020 to 133,601 for the same period in 2021. Paid student enrollments of our online small-class after-school tutoring reached 294,397 in the first quarter of 2021, representing a 222.6% growth from 91,260 in the third quarter of 2020. Our net revenues increased by 50.6% from RMB2,668.7 million in 2019 to RMB4,018.4 million (US$613.3 million) in 2020, and by 19.9% from RMB1,122.7 million for the three months ended March 31, 2020 to RMB1,345.7 million (US$205.4 million) for the same period in 2021. Our gross billings increased by 36.3% from RMB3,855.3 million in 2019 to RMB5,254.4 million (US$802.0 million) in 2020, and by 73.1% from RMB762.0 million for the three months ended March 31, 2020 to RMB1,319.3 million (US$201.4 million) for the same period in 2021.

(Emphasis added.)

66.     The statements identified in Paragraph 65 above were materially false and misleading when made because the Company's rapid growth did not evidence the "success of [Zhangmen's] business model" but rather abusive and unsustainable business practices which were already slated for reform as outlined in Paragraphs 5 to 7 and 41 to 57 above, and because the statements omitted the following facts necessary to make the statements not misleading under the circumstances in which they were made: (a) that the growth had been driven by false advertising and fraudulent pricing by Zhangmen and its peers; (b) that Zhangmen and its peers had already been fined by Chinese regulators for such fraudulent practices; (c) that the growth had already reached a point where the burdens the services imposed upon Chinese students and their families was oppressive and unsustainable; and (d) that Chinese regulators had already made clear within China that they intended to reform the industry to reduce these burdens.

67.     In addition, the Registration Statement was materially incomplete and omitted facts necessary to make the statements made therein not misleading with respect to recent regulatory developments in China and failed to disclose the most significant rules and regulations affecting Zhangmen's business and operations. For example, the Registration Statement stated that a "Recent Development" in PRC regulations did not pose "material obstacles to [the Company]:

**Recent Development**

The State Council promulgated the amended Regulations on the Implementation of the Law for Promoting Private Education of the PRC on April 7, 2021, or the Amended Implementation Regulations of Private Education Law, which will become effective on September 1, 2021. The Amended Implementation Regulations of Private Education Law requires a private school engaging in online education activities using internet technology to obtain a private school operating permit. As advised by our PRC counsel, Tian Yuan Law Firm, we may need to obtain the private school operating permit as an online tutoring service provider, according to the Amended Implementation Regulations of Private Education Law. We intend to apply for this permit when the regulatory authorities issue detailed rules setting forth the level of government authorities in charge of permit review and issuance and when the government authorities start to accept applications around September 1, 2021. We have already made filings with the regulatory authorities as an online after-school training institution according to Implementation Opinions on Regulating Online After-School Training issued by the Ministry of Education, together with certain other PRC government authorities, in 2019. Based on our consultation with relevant government authorities, as we have made the foregoing filings, ***we do not perceive material obstacles to us obtaining the private school operating permit***.

68.     The statements identified in Paragraph 67 above were materially false and misleading when made because they omitted the following facts necessary to make the statements not misleading under the circumstances in which they were made: (a) that Zhangmen had placed itself in the crosshairs of Chinese regulators due to its false advertising and fraudulent pricing; (b) that the tutoring services hawked by Zhangmen imposed an oppressive time burden upon Chinese students, on top of their homework, and imposed an oppressive financial burden upon their parents, contravening the official policy of the CCP and PRC; (c) that Chinese regulators

had already indicated that they would reform the private tutoring industry to reduce abusive practices and the unfair burdens placed upon Chinese students and their families; (d) as a result of (a), (b) and (c) there were material obstacles to receiving further permits from regulators; and (e) the timing of Zhangmen's IPO, which occurred right after it received the most serious fine in its corporate history, and right before permit rules were published, suggests that Defendants did perceive at least a reasonable likelihood that there would be a material obstacle, and were attempting to ensure the IPO closed before that obstacle materialized.

69.     Similarly, the Registration Statement provided the following summary of the rules, regulations, and regulatory environment applicable to Zhangmen's business but left out the most impactful impending policy changes – including the outright ban on profit-making in the Chinese tutoring industry – as well as crucial details about the fines that Zhangmen received just days before the final amendment of the Registration Statement, stating in pertinent part as follows:

**Regulation Relating to Private Education**

* * *

On April 7, 2021, the State Council promulgated the amended Regulations on the Implementation of the Law for Promoting Private Education of the PRC, or the Amended Implementation Regulations of Private Education Law, which will become effective on September 1, 2021. The Amended Implementation Regulations of Private Education Law provides that, among others, carrying out online education activities using internet technology is encouraged by the State and shall be in compliance with internet management related laws and regulations. A private school engaging in online education activities using internet technology shall obtain relevant private school operating permit. Moreover, a private school engaging in online education activities using internet technology shall establish and implement internet security management systems and technical measures for security protection. Upon discovery of any information of which the release or transmission is prohibited by relevant laws or regulations, the private school shall immediately stop the transmission thereof and take measures such as deletion so as to prevent the information from spreading. Relevant records shall be kept and reported to the relevant competent authorities.

As advised by our PRC counsel, Tian Yuan Law Firm, we may need to obtain the private school operating permit as an online tutoring service provider, according to the Amended Implementation Regulations of Private Education Law. We intend to apply for this permit when the regulatory authorities issue detailed rules setting forth the level of government authorities in charge of permit review and issuance and when the government authorities start to accept applications around September 1, 2021. We have made filings with the regulatory authorities as an online after-school training institution according to Online After-School Training Opinions. **_Based on our consultation with relevant government authorities, as we have made the foregoing filings, we do not perceive material obstacles for us to obtain the private school operating permit._** For potential risks on our business due to the Amended Implementation Regulations of Private Education Law, see "Risk Factors—Risk Factors Related to Our Business and Industry—Certain aspects of our business operations may be deemed not to be in full compliance with PRC regulatory requirements regarding online private education. **_In addition, uncertainties exist in relation to new legislation or proposed changes in the PRC regulatory requirements regarding online private education, which may materially and adversely affect our business, financial condition and results of operations._**"

### Regulation Relating to After-school Tutoring and Educational Apps

On February 13, 2018, the MOE, the Ministry of Civil Affairs, the Ministry of Human Resources and Social Security and the SAMR jointly promulgated the Circular on Alleviating After-school Burden on Primary and Secondary School Students and Implementing Inspections on After-school Training Institutions, pursuant to which the government authorities will carry out a series of inspections on after-school training institutions and order those with material potential safety risks to suspend business for self-inspection and rectification and those without proper establishment licenses or school operating permits to apply for relevant qualifications and certificates under the guidance of competent government authorities. Moreover, after-school training institutions must file with the local education authorities and publicly present the classes, courses, target students, class hours and other information relating to their academic training courses (primarily including courses on Chinese and mathematics). After-school training institutions are prohibited from providing academic training services beyond the scope or above the level of school textbooks, or organizing any academic competitions (such as Olympiad competitions) or level tests for students of primary and secondary schools. In addition, primary and secondary schools may not reference the student's performance in the after-school training institutions as one of admission criteria.

. . . The training content of after-school training institutions cannot exceed the corresponding national curricular standards and training progress shall not be more accelerated than the corresponding progress of local schools. According to State Council Circular 80, after-school training institutions are also required to disclose and file relevant information regarding the institution, including their training content, schedule, targeted students and school timetable to the relevant education

authority, and their training classes may not end later than 8:30 p.m. each day or otherwise conflict with the teaching time of local primary and secondary schools. Course fees can only be collected for courses in three months or shorter installments.

* * *

The General Office of the MOE enacted the Notice of Strengthening the Management of Homework for Compulsory Education on April 8, 2021, which requires that the local governments shall implement prohibition measures on leaving homework as an important part of the daily supervision on after-school training institutions in accordance with relevant regulations, and in order to avoid reducing the burden in schools but increasing the burden after-school, after-school training institutions shall not leave homework to primary and secondary school students.

### Regulation Relating to the Online After-School Training

The MOE and certain other PRC government authorities jointly promulgated the Implementation Opinions on Regulating Online After-school Training, or the Online After-school Training Opinions, as effective on July 12, 2019. The Online After-school Training Opinions is to regulate academic after-school training involving internet technology provided to students in primary and secondary schools. The Online After-School Training Opinions requires, among others, that online after-school training institutions should file with the competent provincial regulatory authorities of education and such regulatory authorities of education, jointly with other provincial government authorities, should review the filings and qualifications of the online after-school training institutions.

With respect to the filing requirements, the Online After-school Training Opinions provides, among others, that (i) an online after-school training institution should file with the competent provincial regulatory authorities of education after it obtains the ICP License and the grade evaluation report for the graded protection of cybersecurity; (ii) the materials need to be filed by the online after-school training institutions include, among others, the materials related to the institution (such as the information on their ICP Licenses and other relevant licenses), the management systems used for protection of personal information and cybersecurity, the training content and the training personnel; and (iii) the competent provincial regulatory authorities of education should promulgate local implementing rules on filing requirements, which should focus on training institutions, training content and training personnel.

70.     The statements identified in Paragraph 69 above were materially false and

misleading when made because they omitted the following facts necessary to make the statements

not misleading under the circumstances in which they were made: (a) that Zhangmen had placed

itself in the crosshairs of Chinese regulators due to its false advertising and fraudulent pricing; (b) that the tutoring services hawked by Zhangmen imposed an oppressive time burden upon Chinese students, on top of their homework, and imposed an oppressive financial burden upon their parents, contravening the official policy of the CCP and PRC; (c) that Chinese regulators had already indicated that they would reform the private tutoring industry to reduce abusive practices and the unfair burdens placed upon Chinese students and their families; (d) as a result of (a), (b) and (c) there were material obstacles to receiving further permits from regulators; (e) the timing of Zhangmen's IPO, which occurred right after it received the most serious fine in its corporate history, and right before permit rules were published, suggests that Defendants did perceive at least a reasonable likelihood that there would be a material obstacle, and were attempting to ensure the IPO closed before that obstacle materialized; (f) that the statements of powerful CCP and State entities including the Central Commission for Discipline Inspection and the National Supervision Commission, as well as the mandates from President Xi Jinping and Minister of Education Chen Baosheng made it extremely unlikely, and not just "uncertain[]," that Zhangmen would be able to continue its abusive business model; and (g) Chinese authorities had already signaled that they would ban profit-making by after-school tutoring companies like Zhangmen.

71.     The Registration Statement was also materially false and misleading because Zhangmen was required to disclose therein "known trends, uncertainties, and events" pursuant to Item 303 of Regulation S-K, but did not fully or fairly disclose the known trends, uncertainties, and events surrounding the Chinese regulatory reforms discussed since January 2021, or the regulatory enforcement actions against it and other tutoring companies, as identified above in Paragraphs 41 to 57.

72.     SEC Regulation S-K (27 CFR 229.10) provides that registration statements such as the one filed by Zhangmen on Form F-1 comply with the other requirements of Regulation S-K "to the extent provided in the forms to be used for registration under the [Securities] Act." 17 C.F.R. 229.10. Form F-1 requires registrants to furnish the information required by Part I of Form 20-F. Part I, Item 5(d) Form 20-F, in turn, requires registrants to:

> [D]iscuss, for at least the current financial year, any known trends, uncertainties, demands, commitments or events that are reasonably likely to have a material effect on the company's net sales or revenues, income from continuing operations, profitability, liquidity or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial condition.

73.     Item 5(d) of Form 20-F "call[s] for the same disclosure as Item 303 of Regulation S-K". *In Re Comm'n Guidance Regarding MD&A of Fin. Condition & Results of Operation*, Release No. 8350 (Dec. 19, 2003) (the "2003 Guidance") available at 2003 WL 22996757, *1 n.1.

74.     Regulation S-K provides that the discussion of known trends, uncertainties, and events should appear in the section of an issuer's registration statement reporting "Management's Discussion and Analysis of Financial Condition and Results of Operations" ("MD&A"). In a 1989 Interpretive Release, the SEC described the purposes of MD&A:

> The Commission has long recognized the need for a narrative explanation of the financial statements, because a numerical presentation and brief accompanying footnotes alone may be insufficient for an investor to judge the quality of earnings and the likelihood that past performance is indicative of future performance. MD&A is intended to give the investor an opportunity to look at the company through the eyes of management by providing both a short and long-term analysis of the business of the company. The Item asks management to discuss the dynamics of the business and to analyze the financials.

*Management's Discussion & Analysis of Fin. Condition & Results of Operations;
Certain Inv. Co. Disclosures*, Release No. 6835 (May 18, 1989) (the "1989
Interpretive Release") available at 1989 WL 1092885.[1]

75.      In violation of Regulation S-K, Zhangmen did not include in the Registration

Statement's MD&A section a full and accurate explanation of known trends, uncertainties,

demands, commitments, or events that were reasonably likely to have a material effect on net

sales, income from continuing operations, profitability, liquidity or capital resources, or that

would cause reported financial information not necessarily to be indicative of future operating

results or financial condition.  In particular, Zhangmen did not fully and accurately disclose the

known regulatory trends discussed above in Paragraphs 5 to 7 and 41 to 57, or the ramifications

of its recent fines outlined in Paragraphs 4, 7 and 57.

76.      The Registration Statement was also inaccurate in its description of Zhangmen's

fines, misleadingly portraying them as consistent with historic practice:

> Under PRC advertising, pricing and anti-unfair competition laws and regulations,
> we are obligated to monitor our advertising and promotional content to ensure that
> such content is true, accurate not misleading and in full compliance with applicable
> laws and regulations. For example, the PRC Pricing Law provides that an operator
> is prohibited from using false or misleading pricing methods to induce consumers
> or other operators to enter into transactions with it. The PRC Anti-Unfair
> Competition Law prohibits business operators from making false or misleading
> commercial promotions regarding its performance, functions, quality, sales, user
> feedback or accolades, to defraud or mislead customers. In addition, education or
> training advertisements are further prohibited from containing content such as
> guarantees that a candidate will pass the examination or regarding the effect of
> education or training, recommendation and/or endorsement by scientific research
> institutes, academic institutions, educational organizations, industry associations,
> professionals or beneficiaries using their name or image. Violation of these laws
> and regulations may subject us to penalties, including fines, confiscation of relevant
> income, orders to cease dissemination of the inappropriate advertisements and
> promotions, and orders to publish an announcement correcting the misleading
> information. ***We have implemented internal review and employee training
> procedures to ensure the appropriateness of our advertising and promotional***

[1] The 1989 Interpretive Guidance applies to Item 5(d) of Form 20-F, the disclosure requirement
incorporated by reference into Form F-1. Form 20-F, Instruction 5 (stating that issuers should refer
to the 1989 Interpretive Guidance); 2003 Guidance, at 2003 WL 22996757, *1 n.1 (same)

***content. However, there is no guarantee that such measures would always be effective in preventing potential violations, particularly in light of the evolving laws and regulations and the increased regulatory scrutiny in recent periods. For example, historically we had been subject to fines imposed by relevant governmental authority for making misleading advertisements and promotions (including recently with respect to certain inappropriate advertisements concerning the enrollment, faculty, content, effectiveness and pricing of our courses) and had been ordered to remove such advertisements and promotions.*** In circumstances involving serious violations by us, PRC government authorities may force us to terminate our advertising and promotional operations or revoke our licenses. See "Regulation—Regulation Relating to Advertising, Pricing and Promotion."

Relevant PRC regulatory authorities have significant discretion in interpreting and implementing the PRC Advertising Law, PRC Pricing Law, the PRC Anti-Unfair Competition Law and the related rules and regulations. While we have made more efforts to ensure that our advertisements are in full compliance with applicable PRC laws and regulations, we cannot assure you that all the content contained in our advertisements and promotions is true and accurate as required by, and complies in all aspects with, such laws and regulations.

77.     The statements identified in Paragraph 76 above were materially false and misleading when made because they omitted the following facts necessary to make the statements not misleading under the circumstances in which they were made: (a) that Zhangmen had been fined only days before filing the final amendment to its Registration Statement; (b) that the government had not just deemed Zhangmen's advertisements inappropriate, but illegal and false; (c) that the 2021 fine was the largest and most serious that Zhangmen had received in its entire corporate history; (d) that Zhangmen did not, in fact, implemented procedures reasonably aimed at preventing false advertising, and as a result, made false representations regarding the efficacy of its tutoring services, the experience of its teachers, and the number of its applicants; and (e) that by these abusive practices, Zhangmen had put itself squarely in the crosshairs of state regulators, who had already warned that they expected private tutoring companies like Zhangmen to advance civic values.

### Post-IPO Events Implement Reforms Identified Before IPO

78.     On July 23, 2021 – *less than two months after the IPO* – China unveiled the implementing rules for the sweeping overhaul of its education sector that had been discussed openly within China at the highest levels since at least January 2021.  The drastic measures effectively ended any potential growth in the for-profit tutoring sector in China. For example, a *Reuters* report titled "China bars for-profit tutoring in core school subjects" stated that the "move threatens to decimate China's $120 billion private tutoring industry and triggered a heavy selloff in shares of tutoring firms traded in Hong Kong and New York."

79.     On July 26, 2021, Zhangmen issued a release providing an update on the new PRC policies, which stated in pertinent part as follows:

> ***The Guidelines, among other things, require that all institutions offering after-school tutoring on academic subjects in compulsory education be registered as non-profit organizations, obtain approval from the relevant regulatory authorities, and comply with various operational requirements with respect to class hours, faculty qualifications, tuition standards, advertising and others. In addition, the Guidelines prohibit all such tutoring businesses from raising funds through stock exchange listings or other capital-related activities. Foreign investments in school curriculum-based tutoring institutions through variable interest entity (VIE) arrangements, mergers and acquisitions or otherwise are also prohibited. Listed companies are banned from raising capital through equity offerings to invest in businesses offering tutoring on academic subjects in compulsory education. The Guidelines require that all businesses that have already violated these rules take corrective measures as appropriate.*** The Guidelines also provide that institutions offering after-school tutoring on high school curriculum, which is not part of compulsory education, shall also take into consideration of the Guidelines when conducting activities.
>
> Although the interpretation and implementation of the Guidelines remain uncertain, ***we expect the Guidelines to have material impacts on our existing business operations, financial condition and corporate structure***.

80.     On August 25, 2021, Zhangmen issued a press release providing a further update on similar policies implemented by the Shanghai government and the implications for the Company's business, which stated in pertinent part as follows:

[T]he Shanghai Municipality Government issued the Shanghai Municipality's Measures to Further Reduce the Burden of Homework and After-School Tutoring on Students in Compulsory Education in Shanghai (the "Shanghai AST Measures") to implement the requirements set forth in the Opinions on Further Alleviating the Burden of Homework and After-School Tutoring for Students in Compulsory Education, published in July by the PRC central government (the "Central Government Opinions"). ***The Shanghai AST Measures stipulate that, among other things:***

> • *No new provider of after-school tutoring services on academic subjects in China's compulsory education system ("Academic AST") will be approved, while existing Academic AST providers shall be subject to review and re-registration as non-profit organizations.*
>
> • *AST providers are strictly prohibited from providing Academic AST during any national holiday, weekend, winter and summer break period, subject to further restrictions over when Academic AST can be offered to students during weekdays.*
>
> • *Tuition fees for Academic AST shall follow the guidelines from the government to prevent any excessive charging or excessive profit-seeking activities.*
>
> • *Academic AST providers are prohibited from financing its operations by way of listing its securities on stock exchanges or other capital market activities. Listed companies may not invest in Academic AST providers through capital market fundraising activities, or acquire assets of Academic AST providers. Foreign investment will be prohibited in Academic AST providers.*
>
> • *AST advertising shall be subject to enhanced oversight.*

The Company is committed to fully complying with the Shanghai AST Measures and similar measures to be adopted by other local governments, if any, to implement the requirements of the Central Government Opinions. ***Such measures are expected to have material impacts on its existing K-12 course business***.

81.     On November 19, 2021, Zhangmen announced that its auditor, Deloitte Touche Tohmatsu Certified Public Accountants LLP, had voluntarily resigned.

82.     Subsequent to the IPO, the price of Zhangmen ADSs plummeted. As of the filing of this Amended Complaint, Zhangmen ADSs trade at less than $1.50 per ADS, more than 98% below the split-adjusted IPO price:



83.    In December 2021, Zhangmen suspended efforts to acquire and renew subscriptions for its online services in mainland China for students in grades 1 through 9, and pivoted to a "software as a service" business model.

84.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Zhangmen's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

85.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased or otherwise acquired Zhangmen ADSs in its IPO or purchased Zhangmen ADSs thereafter in the stock market pursuant and/or traceable to the Company's Registration Statement issued in connection with the IPO, and were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company or of any entity Defendants, members of Defendants' immediate families and their legal representatives, heirs, successors or assigns, and any entity in

which the Company, any Defendant, or the officers and directors of the Company or of any entity Defendants have or had a controlling interest.

86.    The members of the Class are so numerous that joinder of all members is impracticable.  Since the IPO, the Company's securities have actively traded on NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Zhangmen or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

87.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein, and all bring claims based upon the same theories of liability.

88.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class, and has retained counsel experienced in prosecuting securities class action litigation.

89.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

90.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the Securities Act was violated by Defendants as alleged herein;

(b)     Whether the Registration Statement omitted and/or misrepresented material facts;

(c)     Whether the Registration Statement omitted material facts necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants can demonstrate as an affirmative defense that any portion of the decline in the price of Zhangmen securities after the IPO was caused by an event independent from their own Securities Act violations as alleged herein;

(e)     Whether the Individual Defendants acted as control persons of Zhangmen and are secondarily liable for the primary violations of Zhangmen; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

91.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### (Violations of Section 11 of the Securities Act Against All Defendants)

92.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

93.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Defendants.

94.     The Registration Statement for the IPO was inaccurate and misleading as detailed above.  It contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

95.     Zhangmen is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

96.     As issuer of the shares, Zhangmen is strictly liable to Plaintiff and the Class for the misstatements and omissions.  As signatories of the defective Registration Statement (Individual Defendants and Cogency Defendants) or underwriters of the IPO pursuant to the defective Registration Statement (Underwriter Defendants), Cogency Defendants, and Individual Defendants are also liable to Plaintiff and the Class for the misstatements and omissions.

97.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

98.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

99.     Plaintiff acquired Zhangmen shares pursuant to and traceable to the Registration Statement for the IPO.

100.     Plaintiff and the Class have sustained substantial damages.  The value of Zhangmen securities has declined substantially subsequent to Defendants' violations, and Defendants have not proved any portion of that decline to be attributable to factors independent of the alleged misrepresentations and omissions.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Individual Defendants)**

101.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

102.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

103.     Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Zhangmen within the meaning of Section 15 of the Securities Act.  Individual Defendants had the power and influence and exercised the same to cause Zhangmen to file the defective Registration Statement and to effect the IPO.  Specifically, each signed the defective Registration Statement, and therefore each had the power and authority to withhold such signature and derail Zhangmen's IPO until the defects in the Registration Statement were cured.

104.     Individual Defendants were privy to actual knowledge of the material facts concealed from Plaintiff and the Class.

105.     By virtue of the conduct alleged herein, the Individual Defendants are secondarily liable for Zhangmen's aforesaid wrongful conduct and are liable to Plaintiff and the Class for

damages suffered.  This secondary liability is in addition to their primary liability for their own Securities Act violations, as set forth in Count I.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 12, 2022                              Respectfully submitted,

                                                                   **POMERANTZ LLP**


                                                                   */s/ Joshua B. Silverman__*

                                                                   Joshua B. Silverman
                                                                   (admitted *pro hac vice*)
                                                                   10 South LaSalle Street, Suite 3505
                                                                   Chicago, Illinois 60603
                                                                   Telephone: (312) 377-1181
                                                                   jbsilverman@pomlaw.com


                                                                   Jeremy Alan Lieberman
                                                                   J. Alexander Hood II
                                                                   POMERANTZ LLP

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Yanhong Chen
and Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Yanhong Chen*