UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAURAV BANERJEE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ZHANGMEN EDUCATION INC., YI ZHANG, RICKY KWOK YIN NG, TENG YU, COGENCY GLOBAL INC., COLLEEN A. DE VRIES, MORGAN STANLEY & CO. LLC and CREDIT SUISSE SECURITIES (USA) LLC, <br><br> Defendants. | Case No.  1:21-cv-09634-JPO <br><br> Hon. J. Paul Oetken <br><br> <u>Class Action</u> <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT .........................................................................................................................6

I.    Plaintiff faces a minimal pleading burden under the Securities Act....................................6

II.   Plaintiff's claims do not sound in fraud ..............................................................................8

III.  The Complaint sufficiently alleges material misrepresentations and omissions in the
      Registration Statement .......................................................................................................13

      a.   Misleading statements inaccurately describing reform measures.........................13

      b.   Misleading description of SAMR investigation and fine ......................................18

      c.   Misleading statements about impediments to obtaining additional licenses ........20

      d.   Violations of Item 303 of Regulation S-K.............................................................21

      e.   Misleading statements about the source and sustainability
           of Zhangmen's growth..........................................................................................22

IV.   Defendants' scienter arguments violate controlling authority .........................................23

V.    The Complaint adequately alleges control person liability under the Securities Act ........24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altayyar v. Etsy, Inc.*,
   242 F. Supp. 3d 161 (E.D.N.Y. 2017) ...................................................................................9

*Altayyar v. Etsy, Inc.*,
   731 F. App'x 35 (2d Cir. 2018) ...........................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................7

*Caiafa v. Sea Containers Ltd.*,
   No. 06 CIV. 2565 (RMB), 2008 WL 11516813 (S.D.N.Y. May 15, 2008) ...........................11

*Caiola v. Citibank, N.A.*,
   295 F.3d 312 (2d Cir. 2002) ...............................................................................................13

*Chechele v. Laubies*,
   527 F. Supp. 3d 526 (S.D.N.Y. 2021).............................................................................12, 13

*Christine Asia Co. v. Ma*,
   718 F. App'x 20 (2d Cir. 2017) ..........................................................................................16

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014)...........................................................................................23, 24

*Coronel v. Quanta Cap. Holdings Ltd.*,
   No. 07 CIV. 1405 (RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009)..................................11

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)..............................................................................................1, 11

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000).............................................................................................17, 19

*Gordon v. Tencent Music Ent. Grp.*,
   No. 19CV5465LDHPK, 2021 WL 9183821 (E.D.N.Y. Mar. 31, 2021) ............................8, 16

*Herman & Maclean v. Huddleston*,
   459 U.S. 375 (1983)..........................................................................................................1, 6, 23

*Hutchison v. Deutsche Bank Sec. Inc.*,
   647 F.3d 479 (2d Cir. 2011)..............................................................................................6, 10

ii

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  No. 03 CIV. 7301, 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007)...........................................11

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  542 F. Supp. 2d 266 (S.D.N.Y. 2008)....................................................................................11

*In re Axis Cap. Holdings Ltd. Sec. Litig.*,
  456 F. Supp. 2d 576 (S.D.N.Y. 2006)....................................................................................11

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
  No. 20CV2706ARRPK, 2022 WL 541891 (E.D.N.Y. Feb. 23, 2022)....................................7

*In re CitiGroup Inc. Bond Litig.*,
  723 F. Supp. 2d 568 (S.D.N.Y. 2010)......................................................................................9

*In re Elan Corp. Sec. Litig.*,
  No. 02CIV.865(RMB)(FM), 2004 WL 1305845 (S.D.N.Y. May 18, 2004).....................11, 12

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013)....................................................................................17

*In re HEXO Corp. Sec. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021)..................................................................................8, 11

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005)....................................................................................11

*In re MF Glob. Holdings Sec. Litig.*,
  982 F. Supp. 2d 277 (S.D.N.Y. 2013)..................................................................................7, 15

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)...................................................................................................19

*In re OSG Sec. Litig.*,
  971 F. Supp. 2d 387 (S.D.N.Y. 2013)....................................................................................10

*In re OSI Pharms., Inc. Sec. Litig.*,
  No. 04-CV-5505 (JS)(WDW), 2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007) .....................7, 8

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007)..................................................................................9, 10

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016).............................................................................................13, 23

*Kronfeld v. Trans World Airlines, Inc.*,
  832 F.2d 726 (2d Cir.1987)...................................................................................................17

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
No. 07 CIV. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008).................................12

*Levy v. Young Adult Inst., Inc.*,
103 F. Supp. 3d 426 (S.D.N.Y. 2015)....................................................................9, 10, 11, 12

*Lewy v. SkyPeople Fruit Juice, Inc.*,
No. 11 CIV. 2700 PKC, 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ..................................8

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011)....................................................................................................7

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011).............................................................................................................7, 20

*Meyer v. JinkoSolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)...................................................................................................13

*Oakley v. Dolan*,
980 F.3d 279 (2d Cir. 2020)...................................................................................................21

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
98 F.3d 2 (2d Cir. 1996).........................................................................................................15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................10, 11, 20, 21, 23, 24

*Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*,
595 F.3d 86 (2d Cir. 2010)....................................................................................................13

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
297 F.3d 1182 (11th Cir. 2002) .............................................................................................22

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012)..................................................................................................22

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)........................................................................................8, 12, 24

*S.E.C. v. Bank of Am. Corp.*,
677 F. Supp. 2d 717 (S.D.N.Y. 2010)..............................................................................17, 18

*S.E.C. v. Sequential Brands Grp., Inc.*,
No. 20-CV-10471 (JPO), 2021 WL 4482215 (S.D.N.Y. Sept. 30, 2021) ..............................19

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
248 F. Supp. 3d 428 (S.D.N.Y. 2017)......................................................................................9

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015)........................................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................7

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
  985 F.2d 1190 (2d Cir.1993).....................................................................................17

**Rules**

Fed. R. Civ. P. 8................................................................................1, 7, 9, 10, 13

Fed. R. Civ. P. 9(b) ................................................................................... *passim*

**Statutes**

Securities Exchange Act of 1934...................................................................11

Securities Act of 1933.............................................................................. *passim*

Lead Plaintiff Yanhong Chen, by her attorneys, hereby opposes Defendants' motions to dismiss (ECF Nos. 38 and 41) as follows:

**INTRODUCTION**

Plaintiff asserts simple and well-pled claims under Section 11 of the Securities Act, which has the most lenient pleading standard under federal securities laws.  Scienter, reliance and loss causation need not be shown, and even falsity need only be alleged under the "short and plain statement" standard of Rule 8(a).  *See Herman & Maclean v. Huddleston*, 459 U.S. 375, 382 (1983); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112 n.5 (2d Cir. 2011).

The Complaint easily meets that standard.[1]  It alleges that Defendants used a negligently prepared and inaccurate Registration Statement to sell almost $48 million worth of American Depository Shares ("ADS") of Zhangmen Education Inc. ("Zhangmen" or the "Company"), an after-school tutoring company operating in the Peoples' Republic of China ("PRC" or "China").  Specifically, the Registration Statement did not accurately disclose known threats already articulated within China by powerful government and Chinese Communist Party institutions, as well as President-for-life Xi Jinping, to "resolutely reform" abuses in the after-school tutoring industry.  Nor did it disclose that Zhangmen itself was inspected by the PRC State Administration for Market Regulation ("SAMR") as part of this initiative, resulting in the most serious sanction in Zhangmen's corporate history—a maximum allowable fine levied days before the IPO finding that Zhangmen had "exaggerated its number of applicants, the background of its teachers and its 'magic' in accurately predicting the content of examination papers for national college entrance

---

[1] All "¶__" references are to the numbered paragraphs of the Amended Complaint (the "Complaint"), ECF No. 30.  All references to Zhangmen Brf. are to the memorandum of law filed by the Zhangmen Defendants, ECF No. 39.  All references to Underwriters Brf. are to the memorandum of law filed by the Underwriter Defendants, ECF No. 42.  Unless otherwise noted as appearing in the original, all emphasis is supplied.

exams." The Registration Statement also neglected to disclose that the growth it described was the result of abusive advertising and pricing practices which Zhangmen had been told by the SAMR it could not continue.

Unable to squarely address Complaint allegations, Defendants devote their briefs to attacking straw arguments related to claims and theories not alleged. First, they improperly argue (in violation of controlling authority that they strategically avoid) that additional pleading requirements should artificially be imposed, even though Plaintiff's claims do not mention scienter and assiduously avoid pleading fraudulent intent. Next, they attempt to reimagine Complaint allegations as predicting future events, when the actual allegations address inaccurate disclosures of *already-made* policy statements, including by President Xi, an *already-completed* investigation of Zhangmen's abusive practices and similar misconduct by industry peers, and an *already-imposed* maximum fine resulting from that investigation. *See, e.g.,* ¶¶42-62.

Because Defendants fail to show any pleading deficiencies in Plaintiff's claims as they are actually alleged in the Complaint, Defendants' motions should be denied in their entirety.

## STATEMENT OF FACTS

Zhangmen is a provider of one-on-one and small-class after-school tutoring services for K-12 students in the PRC. ¶2. It claims to be the largest one-on-one afterschool tutoring provider in China. ¶3. One-on-one tutoring accounts for 87% of Zhangmen's revenues, with small class tutoring providing the remainder. ¶¶38-39.

The PRC is a Communist dictatorship in which all businesses are strictly governed by the mandates of state regulators and the Chinese Communist Party. Since at least 2019, Zhangmen's industry has been targeted by the Chinese Communist Party for engaging in practices harmful to the people, and Zhangmen itself has been targeted by regulators for false advertising. ¶¶4, 42-43.

In February 2019, the Chinese Communist Party and China's State Council proposed a plan for modernizing Chinese education, which contained a "Negative List" of practices to be reformed including restricting foreign investment in K-9 education. ¶42. In November 2019, Zhangmen received a fine from a relatively minor municipal regulator, the Hongkou Administration for Market Regulation. ¶¶4, 43.

By January 2021, the regulatory landscape had dramatically worsened for Zhangmen. ¶¶44-45. Very powerful institutions and leaders within the PRC government and Chinese Communist Party warned that they would drastically reform the private tutoring markets, and especially the one-on-one tutoring market in which Zhangmen claimed to be the market leader. ¶¶5, 44. Specifically, the Central Commission for Discipline Inspection (the highest enforcement division of the Chinese Communist Party) and the National Supervision Commission of the PRC jointly warned in a Chinese announcement that they would reform abuses in one-on-one tutoring companies, and the Chinese Minister of Education warned that "great efforts would be made to regulate and rectify after-school tutoring institutions." ¶¶5, 46.

China's Minister of Education Chen Baosheng emphasized these reforms would address false advertising by private education companies. ¶46. And, in the January 2021 official conference on supervision by the Office of the Education Supervision Committee of the State Council, a number of education departments identified reducing the "Double Burden" imposed by private after-school tutoring companies like Zhangmen on top of an already large homework burden as *the most important task* for education supervision in 2021. ¶47.

China's dictator, President Xi, confirmed on March 6, 2021 that China would "resolutely reform all activities that infringe on [the People's] interests under the banner of education." ¶¶6, 48. At a Chinese Communist Party conference, President Xi called the after-school tutoring abuses

3

a "social problem," and demanded reform. ¶48. Answering his call, draconian limitations were raised at the Chinese Communist Party's annual Parliamentary Session in March 2021. ¶48. The Chinese Communist Party also focused on curbing abuses at private tutoring companies at its March 15 consumer rights gala. ¶49. On March 31, 2021, the Ministry of Education identified reducing the "Double Burden" as a key task for 2021. ¶50.

In May 2021, according to the founder of competing after-school education company New Oriental Education (Yu Minhong), a crackdown on the industry was "imminent" because it was full of "misbehavior." ¶52. Zhangmen and other after school education companies were investigated by the State Administration for Market Regulation in May 2021. ¶51. Yuan Xilu, head of the SAMR, indicated within China just prior to the IPO that the investigation concluded that Zhangmen engaged in false advertising and "price fraud." *Id.*

On May 21, 2021, Xi Jinping presided over a meeting of the Central Committee of the Chinese Communist Party, and the Central Committee's Commission for Deepening Overall Reform. ¶54. With his support, the Central Committee adopted "The Opinions of Further Reducing the Burden of Homework and Off-Campus Tutoring for Students in the Compulsory Education Period," (hereafter, the "Opinions"). *Id.* Among other things, the Committee expressed concerns that too much after-school tutoring adversely affected students' physical and mental health. *Id.* On May 31, 2021, analyst Catherine Lim warned that the regulatory reforms could "decimate revenue throughout the industry." ¶55.

On June 1, 2021, the SAMR issued an article describing the widespread abuses identified in its investigation into after-school tutoring companies. ¶56. Zhangmen was identified as a primary culprit, and the SAMR announced that it had fined Zhangmen for serious false advertising and misleading pricing violations. *Id.* A local news report explained the violations found by the

SAMR: ***"Zhangmen.com was found to have exaggerated its number of applicants, the background of its teachers and its 'magic' in accurately predicting the content of examination papers for national college entrance exams."*** *Id.* Another explained that regulators assessed Zhangmen One-on-One "with a ***severe fine*** of 10 million yuan," finding that it ***"exaggerated the number of course applicants and fabricated teachers' teaching experience."*** *Id.* These fines were the direct result of the "great efforts … to reform and rectify" industry abuses that the Chinese Communist Party had warned about for months. ¶57. According to China Daily, the "clampdown follows concern over competition to ensure that children go to good schools, which has triggered anxiety among parents and students. Parents have also been unhappy with misconduct such as false advertising and difficulty in obtaining refunds for lesson fees." *Id.*

Faced with the existential threat articulated by the Chinese Communist Party and the damning conclusions published by the SAMR, many other Chinese education-related firms scrapped or postponed plans for initial public offerings, including VIPKid, Huohua Siwei, Zuoyebang and Yuanfuda. ¶55. Zhangmen barreled forward, but failed to accurately disclose the existential risks, SAMR investigation, or the fact that it had just received by far the most serious sanction in its corporate history. ¶58.

On June 4, 2021, Zhangmen filed the final amendment to its Registration Statement on Form F-1/A, which incorporated the prospectus. *Id.* The Registration Statement emphatically discouraged investors from independently investigating any related information, including the fines against it and the government policies threatening the after-school education industry. *Id.; see also infra* at 18-19.

As detailed in the Complaint and in Section III herein, the Registration Statement misrepresented and omitted several then-existing material facts. It did not accurately describe: (1)

the warnings that Chinese regulators and even President Xi had delivered to the industry; (2) the investigation of Zhangmen conducted just prior to the IPO in connection with these promised reforms, and the maximum fine imposed therefrom; or (3) the source and sustainability of Zhangmen's growth.  ¶¶63-77.

On June 7, 2021, Zhangmen requested that the SEC accelerate the effectiveness of its Registration Statement to 4:30 p.m. of that day to allow a June 8, 2021 IPO. ¶59.  The SEC agreed to that request, and on June 7, 2021 declared the Registration Statement effective (as well as the associated Form F-6 describing the form of ADS).  ¶¶60-61.  On June 8, 2021, Zhangmen conducted the IPO, selling 4,166,450 ADS priced at $11.50 each pursuant to the defective Registration Statement, raising $47.9 million in gross proceeds.  ¶62.

## ARGUMENT

### I.    Plaintiff faces a minimal pleading burden under the Securities Act

Section 11 of the Securities Act imposes "a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 381-82 (1983).  "Liability against the issuer of a security is virtually absolute, even for innocent misstatements. Other defendants bear the burden of demonstrating due diligence." *Id.*  To state a Section 11 claim, a plaintiff need only establish one of the following: "(1) a material misrepresentation; (2) a material omission in contravention of an affirmative legal disclosure obligation; or (3) a material omission of information that is necessary to prevent existing disclosures from being misleading." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 (2d Cir. 2011). In contrast to Section 10(b) claims, "plaintiffs alleging violations of Sections 11 and 12(a)(2) [do] not need [to] plead scienter, reliance, or loss causation." *Id.* (internal quotation and citation omitted).

Claims under the Securities Act must satisfy only the notice pleading standards of Federal Rule of Civil Procedure 8, which requires a "short and plain statement" of the claim showing that the pleader is entitled to relief. *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). Under Rule 8, "dismissal is improper as long as the complaint furnishes adequate notice of the basis of the plaintiff's claim and relief could be granted under [some] set of facts consistent with the allegations." *In re MF Glob. Holdings Sec. Litig.*, 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013) (internal quotation and citation omitted). To survive a Rule 12(b)(6) motion, a complaint "need only allege 'enough facts to state a claim to relief that is plausible on its face.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing such a motion, a court must accept all well-pled factual allegations as true, draw all reasonable inferences in plaintiff's favor, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-22 & n.4 (2007).

A defendant may not dispute well-pleaded factual allegations by external evidence. Such materials cannot be considered without converting to a motion for summary judgment, unless subject to judicial notice or incorporated by reference. *In re OSI Pharms., Inc. Sec. Litig.*, No. 04-CV-5505 (JS)(WDW), 2007 WL 9672541, at *3 (E.D.N.Y. Mar. 31, 2007). Even where subject to judicial notice or incorporated by reference, such materials can only be referenced to "determine what statements the documents contain, not for the truth of the matters asserted." *In re Chembio Diagnostics, Inc. Sec. Litig.*, No. 20CV2706ARRPK, 2022 WL 541891, at *6 (E.D.N.Y. Feb. 23, 2022). Here, Defendants have submitted thirteen external exhibits (ECF No. 40), many of which are wholly inappropriate. Plaintiff does not dispute consideration (for the text only, not truth of the matters contained therein) of: (1) the Registration Statement, ECF No. 40-1; (2) the news

7

articles referenced in the Complaint, ECF Nos. 40-2, 40-3, 40-4, 40-6, 40-7 and 40-10 and 40-12; or (3) the opinion submitted as ECF No. 40-13.  However, documents not referenced in the Complaint may not be used to dispute well-pleaded allegations.  *OSI*, 2007 WL 9672541, at *3. Thus, ECF Nos. 40-5, 40-9, and 40-11 cannot be considered.  Such external reference is particularly inappropriate here, where the Registration Statement warns investors not to rely on any external source of information.  *See infra* at 18-19.

## II.      Plaintiff's claims do not sound in fraud

Since "fraud is not an element or a requisite to a claim under Section 11 [or 12] ... a plaintiff need allege no more than negligence to proceed."  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).  Only where "where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims" must a plaintiff plead the details of the statements with particularity pursuant to Fed. R. Civ. P. 9(b).[2]  *Id.* at 170 (applying Rule 9(b) only because, unlike here, the Section 11 claims incorporated fraud allegations from inextricably intertwined Exchange Act claims).  The gravamen and basis for this Complaint is plainly negligence, not fraud.

Plaintiff's Complaint alleges only Securities Act claims and is brought exclusively under a negligence theory.  *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) (Securities Act claim did not sound in fraud where plaintiffs articulated claim "in the language of

---

[2] This can occur where a Section 11 claim is a "mirror image" of a fraud-based Section 10(b) claim, *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 299 n.17 (S.D.N.Y. 2021), or where "plaintiffs [made] little, if any, effort to differentiate their asserted negligence claims from the fraud claims which permeate the Complaint," *Rombach*, 355 F. 3d at 172 (internal quotation and citation omitted).  However, even when both Section 11 and Section 10(b) claims are alleged, a plaintiff "may adequately distinguish … Securities Act claims by creating a structural and descriptive separation of those claims from the fraud claims in the same complaint." *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 CIV. 2700 PKC, 2012 WL 3957916, at *8 (S.D.N.Y. Sept. 10, 2012); *Gordon v. Tencent Music Ent. Grp.*, No. 19CV5465LDHPK, 2021 WL 9183821, at *2 n.3 (E.D.N.Y. Mar. 31, 2021) (where Section 11 was pled separately as a "stand alone" claim, it "is not subject to the Rule 9(b) pleading standard.").

negligence"). Specifically, it alleges that the "Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading…." ¶11; *see also* ¶34 ("Underwriter Defendants were negligent"); ¶¶92, 101 (disclaiming any intent to plead "fraud, recklessness, or intentional misconduct"). Where, as here, claims are "at least evocative of negligence," they "are subject to the standard Rule 8 pleading requirements." *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 185 (E.D.N.Y. 2017) *aff'd*, 731 F. App'x 35 (2d Cir. 2018); *see also Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 446 (S.D.N.Y. 2015) ("Because [plaintiff] does not plead the elements of fraud, it is unfair to require it to satisfy the heightened pleading standards"); *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 587 (S.D.N.Y. 2010) (recognizing plaintiffs' choice to allege negligence and not fraud).

Plaintiff asserts *no* Section 10(b) or other fraud-based claims. Defendants admit that the Complaint does not allege scienter, *see*, *generally*, Underwriter Brf., and Zhangmen Brf. at 14 n.13. Indeed, the word "scienter" does not appear even once in the Complaint. Nor does the Complaint contain even a single allegation accusing Defendants of *intending* to defraud investors or acting with severe recklessness towards the prospect of defrauding investors. To the contrary, the Complaint expressly disclaims any inference that it is alleging fraudulent intent or recklessness. ¶¶92, 101. Where, as here, "a plaintiff expressly disclaims allegations of fraud and affirmatively alleges negligence, this is generally sufficient to relieve the plaintiff of Rule 9(b)'s requirements." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 448 (S.D.N.Y. 2017).

Defendants' arguments for imposing an elevated pleading standard violate controlling authority. First, they contend that allegation that a statement was "misleading" transforms a negligence claim into one of fraud. *See* Zhangmen Brf. at 11. But, as the Supreme Court has made

9

clear, the law provides the exact opposite.  In *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015), the Supreme Court confirmed that alleging a statement was misleading by way of omission is a way "to hold issuers liable for the contents of a registration statement," but even with such allegation "the buyer need not prove (as he must to establish certain other securities offenses) that the defendant acted with any intent to deceive or defraud." *Id.* at 179.  "[T]he mere fact that a statement is misleading (as are all false statements, whether intentionally, negligently or innocently made) does not make it fraudulent." *Refco*, 503 F. Supp. 2d at 632.  Phrases like "materially false and misleading" simply track the language of the statute. *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 405 (S.D.N.Y. 2013); *see also Levy*, 103 F. Supp. 3d at 446 (such "superficial reading of these allegations" does not "demonstrate that the gravamen of [plaintiff's] claim sounds in fraud.").

Likewise, allegation that a defendant had actual knowledge of omitted material does not make a Section 11 claim "sound in fraud."  In *Hutchison v. Deutsche Bank Sec., Inc.*, 647 F.3d 479 (2d Cir. 2011), the Second Circuit explained that allegations defendants "knew that these mezzanine loans were in trouble at the time of the IPO" but left such information out of the registration statement. *Id.* at 482.  Nonetheless, Rule 8's "notice-pleading standard" applied. *Id.* at 484.

Nor does controlling authority permit treating a Section 11 claim as sounding in fraud merely because it alleges subjective falsity.  As the Second Circuit has made clear, subjective falsity need only be "plausibly allege[d]." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112 n.5 (2d Cir. 2011) (also stating that such allegation is *not* "one and the same" as "fraudulent intent"). Similarly, the Supreme Court clarified in *Omnicare* that although the concept of subjective falsity

10

is drawn from common law fraud, that "the speaker did not hold the belief she professed," "cannot change § 11's insistence on strict liability."[3]  575 U.S. at 186, 192 n.11.

Unable to refute this controlling authority, Defendants ignore it entirely in their respective Rule 9(b) arguments.  Moreover, none of their cited cases even remotely supports applying Rule 9(b) under the circumstances here.  Most involved intertwined claims of fraud under Section 10(b) of the Securities Exchange Act of 1934, in which no meaningful effort was made to carefully separate the Securities Act claims.[4]  The only cited case where Rule 9(b) was applied in the absence of an intertwined fraud claim under Section 10(b), *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 CIV. 0976 (LAP), 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2008), involved allegations that defendants *intended* to deceive investors to further their financial goals.  Moreover, while certain cited cases hold that mere disclaimers of fraud are insufficient where the plaintiff alleges

---

[3] Moreover, that some of the underlying business conduct which Defendants negligently misrepresented to investors related to the SAMR's finding that Zhangmen engaged in fraudulent advertising, that does not change the "gravamen" of *Plaintiff's* claims.  Those claims only assert that the Registration Statement was negligently prepared, not that Defendants intended to deceive investors.  ¶¶11, 92-105; *see also Levy*, 103 F. Supp. 3d at 444 ("not every claim based on dishonesty necessarily sounds in fraud").

[4] *See, e.g., Rombach*, 355 F. 3d at 170-172 (internal quotation and citation omitted) ("little, if any" effort to distinguish between overlapping Section 10(b) and Section 11 claims); *HEXO*, 524 F. Supp. 3d at 299 n.17 (Section 11 claim was "mirror image" of Section 10(b) claim); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 CIV. 7301, 2007 WL 2615928, at *9-10 (S.D.N.Y. Sept. 10, 2007), *adhered to on reconsideration*, 542 F. Supp. 2d 266 (S.D.N.Y. 2008) ("no such effort" made to distinguish between claims); *Caiafa v. Sea Containers Ltd.*, No. 06 CIV. 2565 (RMB), 2008 WL 11516813, at *5-6 (S.D.N.Y. May 15, 2008) (Section 11 claim mirrored 10(b) claim sounding in fraud); *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006) (Securities Act allegations "inextricably intertwined" with fraud-based Section 10(b) allegations); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (noting heavily overlapping allegations with fraud-based claims and stating that the "entire complaint sounds in fraud"); *Coronel v. Quanta Cap. Holdings Ltd.*, No. 07 CIV. 1405 (RPP), 2009 WL 174656, at *15 (S.D.N.Y. Jan. 26, 2009) (both Exchange Act and Securities Act claims explicitly alleged that defendants intended to deceive investors); *In re Elan Corp. Sec. Litig.*, No. 02CIV.865(RMB)(FM), 2004 WL 1305845, at *11-14, 16 (S.D.N.Y. May 18, 2004)  (noting intertwined Section 10(b) and Section 11 claims).

11

overlapping fraud-based claims based on the same allegations or specifically alleges intent, neither predicate applies to this case.  The Complaint here: (1) contains no fraud claims; (2) contains no allegations of scienter, intent, or recklessness; (3) affirmatively alleges a negligence theory; *and* (4) confirms that it disclaims any inference of intent.    Because Plaintiff "does not plead the elements of fraud," it is "unfair to require [her] to satisfy the heightened pleading standards." *Levy*, 103 F. Supp. 3d at 446.

Finally, even if applicable, which it is not, Rule 9(b) would only require that the circumstances of the misrepresentations be alleged with slightly increased particularity, which would be easily satisfied by the detailed allegations of the Complaint.  Rule 9(b) requires only that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach*, 355 F.3d at 170 (internal quotation and citation omitted).  Here, although the Complaint avoids any connotation of fraud, it does identify with particularity the statements in question (what), the date and means by which they were disseminated to investors (where and when), the persons making such statements (who), and the reason each statement was materially untrue and/or misleading (why).  ¶¶63-77.  Thus, under either standard, the alleged misrepresentations and omissions are actionable. *See Chechele v. Laubies*, 527 F. Supp. 3d 526, 536 (S.D.N.Y. 2021) ("the FAC's allegations easily satisfy Rule 9(b)'s heightened pleading standard, such that it is unnecessary to determine whether the Rule applies").

### III.    The Complaint sufficiently alleges material misrepresentations and omissions in the Registration Statement

Once a company speaks on an issue or topic, "'there is a duty to tell the whole truth,' '[e]ven when there is no existing independent duty to disclose information' on the issue or topic.'" *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) (quoting *Meyer v. JinkoSolar*

*Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014)). When a party chooses to speak, it has a "duty to

be both accurate and complete." *Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002). The

Second Circuit has also held that the "veracity of a statement or omission is measured not by its

literal truth, but by its ability to accurately inform rather than mislead prospective buyers."

*Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir.

2010). The Registration Statement here did not tell the whole truth, and was not accurate. As

identified in the Complaint, it contained several categories of misrepresentations and omissions.

Each is alleged with sufficient detail to easily satisfy both the applicable short, plain statement

required by Rule 8 and the "who, what, when, where, why" of Rule 9(b) that Defendants

erroneously urge the Court to apply.

### a. Misleading statements inaccurately describing reform measures

The Registration Statement omitted from its descriptions of regulatory reforms the most

important information:

- It omitted the most serious statements that regulators had ***already*** made, including that "great efforts would be made to regulate and rectify after-school tutoring institutions," including by addressing false advertising practices, ¶46;

- It omitted that reforms were not threatened just by government bureaucrats, but directly by President-for-life Xi Jinping, who warned ***prior to the filing of the Registration Statement*** that they would "resolutely reform all activities that infringe on [the People's] interests under the banner of education," and described the after-school tutoring business in which Zhangmen operated as a "social problem," ¶¶48, 69-70. The direct focus of Xi Jinping was a crucial distinction given that Chinese government operates as a Communist dictatorship under his firm grip. *Id.; see also* Heritage Foundation, "Is China Totalitarian," available at https://www.heritage.org/asia/commentary/china-totalitarian ("The Chinese Communist Party is dominated by one man, Xi Jinping, whose power is strongr than any leader since Mao."). Indeed, after Xi's statements, a well-known educational scholar warned that reforms this time might be more severe than previous reforms, the CEO of one of Zhangmen's principal competitors warned that a crackdown was imminent, and an analyst warned that regulatory reforms could "decimate revenue throughout the industry," ¶¶48, 52, 55;

13

- It omitted that Zhangmen had already contravened the official policy of the CCP and PRC by imposing an oppressive time burden upon students and an oppressive financial burden on their families, ¶¶69-70;

- It omitted that the Chinese Communist Party made reforming abuses at private tutoring companies like Zhangmen a centerpiece of its consumer efforts, ¶49;

- It omitted that Chinese authorities had already signaled they would ban profit-making by after-school tutoring companies like Zhangmen, ¶¶69-70;

- It omitted that only days before the Registration Statement was filed, Zhangmen was fined by a very powerful regulatory institution, the SAMR, for some of the very abusive practices raised by the PRC government, Chinese Communist Party, and Xi Jinping, ¶56, *and that these fines were a direct result of the reform measures they promised*, ¶57; and

- As a result of Zhangmen's culpability recognized by the SAMR, as well as the aggressive reforms promised, it was not just "uncertain" as the Registration Statement inaccurately stated but highly unlikely that Zhangmen would be able to continue its exploitive business model, ¶¶69-70.

These were not just minor irregularities or down-the-road threats. As Yu Minhong, founder of Zhangmen competitor New Oriental Education, conceded a month before Zhangmen's IPO, an industry crackdown was "imminent" because the industry was plagued by "misbehavior." ¶52. Analyst Catherine Lim warned five weeks before the IPO that regulatory reforms could "decimate revenue throughout the industry." ¶55. In light of these existential threats, many other competitors scrapped or postponed IPO plans before Zhangmen went public. *Id.*

Defendants do not dispute that the alleged omissions were all left out of the Registration Statement, nor could they. Instead, they assert that their inaccuracies are beyond the reach of securities laws because: (1) the Registration Statement included vague "risk warnings" that mentioned reforms; and (2) other news articles, particularly within China, were more truthful than the Registration Statement and addressed some of the deficiencies of the Registration Statement. Both arguments are contrary to law and fact.

14

*First*, while meaningful cautionary language can protect forward-looking statements, it provides no immunity where, as here, the identified language is itself false or misleading. "[C]autionary language that is misleading in light of historical fact cannot be meaningful under the statute," and is not protected. *MF Global*, 982 F. Supp. 2d at 318 (internal quotation and citation omitted). The "relevant cautionary language must be 'prominent and specific,' and must directly address 'exactly the risk that plaintiffs claim was not disclosed.'" *Id.* at 304 (quoting *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996)).

Here, the referenced cautionary language was itself unbalanced, unspecific, incomplete, and misleading. ¶¶69-75. Instead of transparently acknowledging an existential risk, it described "uncertainties" that could resolved with a simple permit. *Id*. It listed certain bureaucratic measures but entirely omitted the most important and ominous developments that had ***already*** occurred, including the direct threats of President Xi and the Chinese Communist Party. It did not even mention that Zhangmen just had been investigated by <u>and</u> received a maximum fine from the SAMR as part of the promised reforms.   It does not excuse Defendants' omissions.

The stark differences between the facts alleged here and the *Tencent* decision cited by Defendants confirms that the representations here are actionable. *Tencent* involved the omission of an investigation that did not officially take place until "one month after the Registration Statement was filed." 2021 WL 9183821, at *4 (also stating that plaintiff had not plausibly alleged that any investigative activities occurred prior to the registration statement). Here, by contrast, the SAMR had not only started but concluded its investigation before the IPO and provided Zhangmen with its damning findings. ¶¶7-8, 56-57. Further, the registration statement in *Tencent* precisely disclosed a government warning to "avoid purchasing exclusive copyright," whereas the severe government warnings articulated prior to the IPO in this case were not accurately recounted. 2021

WL 9183821, at *3.  And, unlike here, *Tencent* did not involve existential threats from the Chinese Communist Party or President Xi.  Thus, *Tencent* serves only to highlight that the claims here contain the very allegations deemed missing in that case.

The Second Circuit decision reversing dismissal in the Alibaba securities litigation likewise shows that Plaintiff's allegations are actionable.  *See Christine Asia Co. v. Ma*, 718 F. App'x 20, 23–24 (2d Cir. 2017).  There, the Second Circuit held that it was error to dismiss claims that a filing omitted "the true facts about the threat to the company that had been communicated by the government of China," even under the much stricter pleading requirements of the Exchange Act. *Id.*  The Registration Statement's omissions of "true facts about the threat" to Zhangmen that had been communicated by the highest levels of the Chinese Communist Party, PRC government, and President Xi are equally actionable, especially considering the far more lenient pleading standard of the Securities Act.

*Second*, that other reports (particularly within China) disclosed some of the facts omitted from the Registration Statement does not excuse those omissions.  The Second Circuit has long warned that "truth on the market" is an "intensely fact-specific" affirmative defense rarely appropriate for resolution on a Rule 12(b)(6) motion.  *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000).  The defense requires evidence, lacking here, that "the corrective information [has been] conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements." *Id.* (internal quotation marks omitted).  "[T]he mere presence in the media of sporadic news reports ... should not be considered to be part of the total mix of information that would clarify or place in proper context the company's representations…." *United Paperworkers Int'l Union v. Int'l Paper Co.,* 985 F.2d 1190, 1199 (2d Cir.1993); *see also Kronfeld v. Trans*

16

*World Airlines, Inc.,* 832 F.2d 726, 736 (2d Cir.1987) ("There are serious limitations on a corporation's ability to charge its stockholders with knowledge of information omitted from a document such as a proxy statement or prospectus on the basis that the information is public knowledge and otherwise available to them.").

Defendants' "truth on the market" defense is not only rejected by controlling authority, but also contradicts the explicit language of the Registration Statement, which discouraged investors from considering external sources.  On page i, it warned:

> ***You should rely only on the information contained in this prospectus*** or in any free writing prospectus that we authorize to be distributed to you. ***We and the underwriters have not authorized anyone to provide you with any information other than that contained in this prospectus*** or in any free writing prospectus prepared by or on behalf of us or to which we have referred you, and neither we, nor the underwriters take responsibility for any other information others may give you.

¶58 (emphasis added).  As another Court in this District explained, a "**reasonable investor will not be charged to regard press reports as a reliable source of information after having read such advice.**" *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 522 (S.D.N.Y. 2013) (emphasis in original).  "[S]ince the [company] itself warned investors not to rely on the media, it would be unreasonable for a shareholder to consider the media pronouncements to be part of the relevant mix of information." *S.E.C. v. Bank of Am. Corp.*, 677 F. Supp. 2d 717, 719 (S.D.N.Y. 2010).[5]

### b.  Misleading description of SAMR investigation and fine

In the month before the IPO, Zhangmen and other after-school tutoring companies were investigated by the SAMR in direct response to President Xi's call to "resolutely reform" industry

---

[5] Defendants' arguments regarding external reports of material information omitted from the Registration Statement regarding the SAMR investigation and fine, permitting, and growth fail for the same reason.

abuses and the Ministry of Education's warning that regulators would "regulate and rectify after-school tutoring institutions." ¶¶5, 7, 46, 56. Three days before the Registration Statement was filed, the SAMR announced that it had concluded the investigation by imposing upon Zhangmen what was the most serious sanction in its corporate history—a maximum fine for illegal pricing practices and misrepresenting to consumers "its number of applicants, the background of its teachers and its 'magic' in accurately predicting the content of examination papers for national college entrance exams." ¶¶7, 12, 56.

Zhangmen's Registration Statement did not accurately describe the nature or seriousness of the SAMR's sanction, instead relegating it to a single vague and highly misleading parenthetical reference. ¶76. It stated:

> … historically we had been subject to fines imposed by relevant governmental authority for making misleading advertisements and promotions (including recently with respect to certain inappropriate advertisements concerning the enrollment, faculty, content, effectiveness and pricing of our courses) and had been ordered to remove such advertisements and promotions.

*Id.* Absent from his description was the truth about the SAMR fine: (a) unlike prior fines, it emanated from the SAMR, the most powerful national market regulator in China, and was thus far more serious than prior fines, which were issued by municipal authorities; (b) unlike prior fines, it was issued pursuant to an investigation opened in response to the calls of President Xi, PRC regulators, and the Chinese Communist Party to "resolutely reform" the abuses of the after-school tutoring industry; (c) the fine was levied for *illegal* pricing and advertising activities, not just "inappropriate" advertising; (d) the fine was levied at the maximum rate allowable for the infraction, indicating that the SAMR determined it to be serious; (e) unlike prior fines, the SAMR action levied fines against a wide array of competitors, indicating that the reforms would be serious and sweeping across the industry; (f) that the fines were announced only days before the IPO; and (g) SAMR findings addressed not just vague "inappropriate" conduct, but also falsification of key

18

sales attributes for Zhangmen's business, including the "number of applicants, the background of its teachers and its 'magic' in accurately predicting the content of examination papers for national college entrance exams." ¶77.

Defendants' suggestion that receiving the most serious fine in corporate history, and the maximum allowable, would somehow be "immaterial" to investors makes no sense. "Materiality is rarely dispositive on a motion to dismiss." *S.E.C. v. Sequential Brands Grp., Inc.*, No. 20-CV-10471 (JPO), 2021 WL 4482215, at *7 (S.D.N.Y. Sept. 30, 2021) (citing *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010)). Misrepresentations or omissions can only be immaterial as a matter of law if they are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ganino*, 228 F.3d at 162. Although the nominal amount of the fine may not have been financially devastating to Zhangmen, there is no question that a reasonable investor could have found the devastating findings, levied days before the IPO by a powerful national regulator charged with investigating abusive practices within the industry President Xi promised to "resolutely reform," to significantly alter the total mix of information available. *Matrixx Initiatives, Inc.*, 563 U.S. 27, 44-46 (2011). None of Defendants' cited cases suggest otherwise.

Defendants' footnote argument regarding securities laws not requiring "overly gloomy" or "pejorative" disclosure is equally misplaced. *See* Zhangmen Brf. at 16-17 n.13, 22. Plaintiff's Complaint does not claim that the ***tone*** of the Registration Statement was misleading. Rather, it alleges that the Registration Statement omitted material ***factual*** information, without which its unbalanced presentation was misleading to investors.

### c. Misleading statements about impediments to obtaining additional licenses

The Complaint also pleads actionable misrepresentations regarding Zhangmen's Zhangmen's qualification for an operating permit. The Registration Statement misleadingly stated: "Based on our consultation with relevant government authorities, as we have made the foregoing filings, we do not perceive material obstacles to us obtaining the private school operating permit." ¶67. Although the Company Defendants claim this to be a "non-actionable opinion," *see* Zhangmen Brf. at 16 n.1, the Supreme Court has established three ways in which statements of opinion can be actionable under the Securities Act. *Omnicare*, 575 U.S. at 184-86. Specifically, a statement of opinion is actionable if it: (1) falsely describes the speaker's subjective beliefs; (2) embeds an untrue statement of fact; <u>or</u> (3) omits to state facts necessary to make the statement of opinion not misleading from the perspective of a reasonable investor. *Id.* The Complaint here plausibly pleads all three avenues of liability.

*First*, the fact that Defendants asked the SEC to accelerate approval of the offering right after they had received the damning fine from the SAMR, to ensure that the offering took place before the regulations were published, strongly suggests that they subjectively perceived difficulties and wanted to get the offering done before those difficulties crystalized.[6] ¶¶9, 59.

*Second*, the representation embeds an untrue statement of fact–that the perception was "based on our consultation with relevant government authorities." ¶¶67, 69. That statement began to appear in the version of the Form F-1 registration statement filed on May 28, 2021, <u>and was not revised</u> after Zhangmen received the serious SAMR sanction on June 1, 2021. *Compare* ¶¶58, 67,

---

[6] Defendants' attempt to dispute these well-pleaded factual allegations, *see* Zhangmen Brf. at 16 n.13, raises a factual dispute inappropriate for a motion to dismiss. *See Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020) ("at the motion to dismiss stage … a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes.").

69 with May 28, 2021 Form F-1/A, available at https://www.sec.gov/Archives/edgar/data/ 1838937/000119312521176743/d145427df1a.htm. Thus, it was not based on any consultation with one of the ***most relevant*** government authorities.

*Third*, because the Registration Statement "omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself … § 11's omissions clause creates liability." *Omnicare*, 575 U.S. at 189.  Specifically, it omitted that serious obstacles existed because President Xi promised to "resolutely reform" industry abuses and the SAMR's investigation just determined Zhangmen to be a bad actor, imposing the maximum allowable fine. ¶¶63-77.

### d. Violations of Item 303 of Regulation S-K

In addition to owing investors accurate disclosure to avoid rendering an unbalanced Registration Statement misleading, Item 303 and Regulation S-K also imposed an affirmative obligation of disclosure. Item 303 "imposes a disclosure duty where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operations." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120 (2d Cir. 2012) (internal quotation and citation omitted). "Item 303(a)(3)(ii) essentially says to a registrant: If there has been an ***important change in your company's business or environment that significantly or materially decreases the predictive value of your reported results***, explain this change in the prospectus. The obvious focus is on preventing the latest reported results from misleading potential investors, thereby promoting a more accurate picture of the registrant's future prospects." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1192 (11th Cir. 2002). Because Item 303 disclosures are mandatory, "a reasonable

investor would interpret the absence of an Item 303 disclosure to imply the nonexistence of [such] known trends or uncertainties." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 102 (2d Cir. 2015) (internal quotation and citation omitted).

Here, there can be no question that the policy proclamation of the dictator of China to "resolutely reform" abuses in Zhangmen's industry, ¶¶6, 7, 48, and that Zhangmen had built its growth on such abusive practices which it was ordered to modify days before the IPO, ¶¶4, 7, 41, 43, 51, 56-57, were highly likely to pose a material adverse effect on future revenues. Accurate disclosure was required. "These circumstances were not simply 'potentially problematic' for the Company; they were very bad." *Panther Partners*, 681 F.3d at 122 (also stating "We have little difficulty concluding that Panther has adequately alleged that the disclosures concerning a problem of this magnitude were inadequate and failed to comply with Item 303.").

### e.  Misleading statements about the source and sustainability of Zhangmen's growth

The Complaint also alleges that the Registration Statement misrepresented the nature and source of Zhangmen's growth, claiming it "evidenced" the "success of our business model" and falsely portraying it as sustainable by describing industry growth as being in the "early stages." ¶¶63, 65. These statements did not accurately disclose the actual source of Zhangmen's growth: improper advertising and pricing fraud, for which Zhangmen and many peers were fined immediately preceding the IPO. ¶¶64, 66. Moreover, far from being in the "early stages" the services were already so oversaturated that regulators had targeted them as oppressive burdens on the time of students and the finances of their families. *Id.* Defendants incorrectly claim that these statements are puffery. But, in the context of the specific warning from the highest levels of the PRC government and Chinese Communist Party had made clear that they would reform industry activity to reduce the financial false charges *curtail* industry activity, threats facing the Company,

it was vitally important for investors to accurately be informed about the source and sustainability of these juiced revenues. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d at 245 (statements that touch on growth are not puffery so long as they are "not so general that a reasonable investor could not have relied upon them in evaluating whether to purchase … stock.").

## IV. Defendants' scienter arguments violate controlling authority

Although the Complaint does not even mention scienter, and scienter is not an element of any claim alleged, Defendants include lengthy briefing on this irrelevant issue. *See* Underwriters' Brf. at 1-7; Zhangmen Brf. at 14 n.12. Defendants miss the point.

That the Complaint does not allege scienter, to which all parties agree, merely reflects that the claims here sound in negligence, not fraud. Scienter is not required for Section 11 and is not alleged here. Under Section 11, "the buyer need not prove that the issuer acted with any intent to deceive or defraud." *Omnicare*, 575 U.S. at 175 (citing *Herman & MacLean*, 459 U.S. at 381-382). The Second Circuit has been equally clear that Section 11 plaintiffs "need not allege scienter, reliance, or causation." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 182 (2d Cir. 2014); *see also Rombach*, 355 F.3d at 169 n.4 (2d Cir. 2004) ("Neither Section 11 nor Section 12(a)(2) requires that plaintiffs allege the scienter or reliance elements of a fraud cause of action."). Because scienter is not an element of Plaintiff's claims and is not the "gravamen" of Plaintiff's complaint, it need not be pled at all.

Significantly, Defendants' scienter arguments do not even mention *Omnicare*, or attempt to address the Supreme Court's rejection of a scienter requirement even where misleading statements or subjective falsity is alleged. *Id.*, 575 U.S. at 179, 192 n.11. Likewise, none of the district court cases Defendants cite address *Omnicare* or its holdings. Further, Defendants' argument that Rule 9(b) requires particularized scienter allegations cannot even be squared with

23

the text of that Rule.  Rule 9(b) actually provides the exact opposite, clarifying that even in situations unlike here where Rule 9(b) applies, "intent … may be alleged generally."  Fed. R. Civ. P. 9(b).  Defendants' scienter arguments have no legal basis.

**V.       The Complaint adequately alleges control person liability under the Securities Act**

Defendants raise no substantive arguments with respect to Plaintiff's control person claim under Section 20 of the Securities Act.  Instead, they simply argue in a footnote that the control person claim should fail if the underlying primary violation is dismissed.  Because there is no pleading deficiency in the underlying Section 11 claim, Plaintiff's control person claims similarly must be sustained.

Dated:  August 10, 2022

Respectfully submitted,

**POMERANTZ LLP**

/s/ *Joshua B. Silverman*

Joshua B. Silverman (admitted *pro hac vice*)
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com

Jeremy Alan Lieberman
J. Alexander Hood II
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Yanhong Chen*
*and Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
(*pro hac vice* application forthcoming)

24

2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Yanhong Chen*